Otha E. TOWNSEND, a/k/a Umar M. Abdullah, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C6–02–61.

Supreme Court of Minnesota.

June 27, 2002.

Rehearing Denied Aug. 12, 2002.

Otha E. Townsend, a/k/a, Umar M. Abdullah, pro se, Bayport, MN, Appellant's Attorney.

Michael A. Hatch, Minnesota Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, MN, Respondent's Attorneys.

## OPINION

BLATZ, Chief Justice.

Otha Townsend appeals from the denial of his second petition for postconviction relief. Appellant Townsend was convicted of first-degree murder in 1994, and on direct appeal he raised the admissibility of evidence relating to an attempted murder he later pleaded guilty to, committed on the same night as the murder. We held that certain of the evidence was inadmissible but its admission was harmless beyond a reasonable doubt, applying a standard that the error is harmless if the weight of all the other evidence is such that it "justifies the verdict regardless of the erroneous admission." *State v. Townsend,* 546 N.W.2d 292, 297 (Minn.1996) [hereinafter *Townsend I* ] (citation and quotation omitted). One year later in *State v. Juarez,* 572 N.W.2d 286, 291 n. 6 (Minn.1997), we acknowledged that we had on occasion previously "misstated the significance of the strength of the evidence of guilt in harmless error analysis," citing as an example *Townsend I.* Townsend then filed a petition for a writ of habeas corpus, which the district court treated as a petition for postconviction relief under Chapter 590, in which Townsend sought application of the correct harmless error standard and a new trial. The postconviction court denied the petition, finding that "[a]ll the ingredients of the proper test and its proper application" were present in the ruling on direct appeal. We affirm on the basis that application of the harmless error standard Townsend seeks results in the conclusion that the admission of the erroneously admitted evidence was harmless.

To address appellant's claim, we need not restate the facts in detail-they are fully

set forth in our decision addressing appellant's direct appeal, *Townsend I,* 546 N.W.2d at 294–95. Lisa Johnson was a neighbor and friend of Candis Koch–Wilson. At about 1:30 a.m. on October 31, 1992, Koch–Wilson brought appellant, a long-time friend, to Johnson's home for appellant to sample and possibly purchase marijuana from Johnson. They made a deal for a purchase, and appellant left with Koch–Wilson to go to an automatic teller machine.

About ten minutes later, appellant returned to Johnson's home alone. Johnson got the marijuana and, with appellant following, headed downstairs to her living room to place the marijuana in a bag. Johnson remembers nothing else until she awoke sometime later on her couch bleeding and having difficulty breathing. She had been shot in the mouth and in the back of the head. Unable to see, she felt her way along the walls of her home to a door, and made her way to the home of a neighbor, who then called 911. Johnson later identified appellant as her assailant.

At approximately 4:00 a.m., a newspaper carrier discovered Koch–Wilson's body on a street not far from an apartment where appellant stayed occasionally. Koch–Wilson had been shot five times in the head. At the nearby apartment police found a duffle bag containing .25 ACP caliber ammunition. Bullets from Koch–Wilson's body and from Johnson were analyzed and also found to be .25 ACP caliber. There was insufficient evidence to show that the same weapon fired the bullets, however, and a weapon was never recovered.

About a week after the murder, appellant's car was found on fire in a remote location in Eagan. An accelerant had been used. Although the license plates had been removed and the vehicle identifica-

tion number (VIN) on the dashboard was not found, police were otherwise able to identify appellant as the owner. Subsequent DNA testing showed that blood found behind the front passenger seat in the car was consistent with Koch–Wilson's DNA.

Appellant was indicted for first- and second-degree murder for the offense against Koch–Wilson, and two counts of attempted murder for the offense against Johnson. The district court granted the motion to sever the attempted murder from the murder charges, and before trial on the murder charges appellant moved to suppress all evidence of the Johnson attempted murder. The district court denied the motion, but clarified for the jury that such evidence would be admitted only for the purpose of proving identity.[1]

At trial, Johnson testified that after she came to, she could not see, and felt her way through the home, smearing blood on the walls. Johnson also revealed that she was seven months pregnant at the time. Seven witnesses testified to Johnson's physical state after the assault, as well as the condition of the apartment. Large, full-color photographs of the Johnson home were used to illustrate the attack on Johnson.

The jury found appellant guilty and he was sentenced to life in prison. On direct appeal, he alleged that the admission of evidence of the attempted murder of Johnson was so prejudicial that he was denied a fair trial. We held that the probative value of some of the evidence of the Johnson offense was significantly outweighed by the possibility of unfair prejudice:

> If evidence relating to the Johnson attempted murder was relevant to either motive or identity, a description of the crime scene may have been helpful.

---

1. Appellant later pleaded guilty to the attempted murder of Johnson.

Several additional descriptions, plus a host of photos, could do nothing but inflame the jury improperly. Similar cumulative evidence of Johnson's injuries, along with evidence of her pregnancy, also should have been excluded.

*Townsend I*, 546 N.W.2d at 296.

We then proceeded to apply harmless error analysis, noting that for error to be harmless, we must be able to declare the belief that the error is harmless beyond a reasonable doubt. *Id.* at 297. We quoted cases stating that:

"Harmless beyond a reasonable doubt" does not mean there must be absolutely no doubt of guilt, rather it means that the weight of all the other evidence is such that it "justifies the verdict regardless of the erroneous admission * * *." *State v. Ford*, 539 N.W.2d 214, 227 (Minn.1995), *cert. denied*, [517] U.S. [1125], 116 S.Ct. 1362, 134 L.Ed.2d 529 (1996).

"[The defendant's] burden is to demonstrate that, despite viewing the evidence in a light most favorable to the government and drawing all reasonable inferences to support the jury's verdict, the jury could still have entertained a reasonable doubt as to his guilt." [*United States v. Foote*, 920 F.2d 1395, 1401 (8th Cir.1990) ]. "We have a natural hesitation to reverse a conviction on errors * * * in the admission of evidence, where the evidence of guilt is strong * * *, [b]ut to reach the conclusion[ ] that the errors were without prejudice we must hold that the guilt of the defendant was conclusively proven." *State v. Flowers*, 262 Minn. 164, 168, 114 N.W.2d 78, 81 (1962) (quoting *State v. Hutchison*, 121 Minn. 405, 409, 141 N.W. 483, 484 (1913)).

*Townsend I*, 546 N.W.2d at 297. We then recounted the strong evidence of appellant's guilt, including the blood on the floor of appellant's car matching the blood of the victim, that appellant was the last person to see the victim alive, the ammunition found in appellant's belongings that matched the bullets in Koch–Wilson and Johnson, and evidence of appellant's flight. *Id.*

Appellant filed a petition for postconviction relief, which was denied. *Townsend v. State*, 582 N.W.2d 225, 288–29 (Minn. 1998) (holding ineffective assistance of counsel claim unsupported by record and other claims raised were known at time of direct appeal and thus barred). He then filed a petition for habeas corpus in the district court of Ramsey County, which is not the county where he is incarcerated. *See* Minn.Stat. § 589.02 (2000) (providing a petition for habeas corpus must be filed in the county where petitioner is incarcerated). For purposes of arguing the petition, appellant was represented by counsel, who stipulated that the matter could be considered as a petition for postconviction relief rather than as for habeas corpus. A petition for postconviction relief is brought in the county where the petitioner was convicted, in this instance Ramsey County.

In his petition, appellant argued that in *State v. Juarez*, 572 N.W.2d 286 (Minn. 1997), this court announced a new standard to be applied for harmless error analysis, specifically identifying as an erroneous application of the standard our decision in *Townsend I*:

We concede that on occasion we have inadvertently misstated the significance of the strength of the evidence of guilt in harmless error analysis. An example is our decision in *Townsend*, on which the court of appeals relied. 546 N.W.2d at 292. To the extent that decision, or any other decision of this court or the court of appeals, misstates the significance of the strength of the evidence in harmless

error analysis, the decision should not be followed.

*Juarez,* 572 N.W.2d at 291 n. 6. Appellant alleged in his habeas petition that he is now entitled to have the erroneous admission of the Johnson attempted murder evidence evaluated for harmless error under the correct standard, and that based on that standard he is entitled to a new trial. The postconviction court denied the petition, interpreting *Townsend I* to have properly decided that any error in the admission of the Johnson attempted murder evidence was harmless beyond a reasonable doubt.

## I.

On review of a postconviction proceeding, this court's role is limited to determining whether there is sufficient evidence to sustain the findings of the postconviction court. *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). A postconviction court's decision will not be disturbed absent an abuse of discretion. *Robinson v. State,* 567 N.W.2d 491, 494 (Minn.1997).

Appellant first claims that the postconviction court erred in construing his petition for a writ of habeas corpus as for postconviction relief. Both habeas corpus, Minn.Stat. ch. 589 (2000), and the postconviction statute, Minn.Stat. ch. 590 (2000), provide a method for challenging a conviction based on claimed constitutional errors, such as the due process error appellant alleges in this case. *See State ex rel. Holm v. Tahash,* 272 Minn. 466, 469, 139 N.W.2d 161, 163 (1965) (holding habeas available to address claimed constitutional errors); Minn.Stat. § 590.01, subd.1(1) (2000) (providing that person convicted of a crime may petition for postconviction relief on the basis that "the conviction obtained or the sentence or other disposition made violated the person's rights un-

der the Constitution"). Perhaps in recognition of the similarity between the two procedures, counsel appearing on behalf of petitioner agreed that the habeas petition could be considered as a petition for postconviction relief. We have previously recognized that attorneys have the authority to make agreements respecting procedure that do not affect the substantive rights of their clients, even without consultation. *Cahaley v. Cahaley,* 216 Minn. 175, 180, 12 N.W.2d 182, 185 (1943) (cautioning that attorneys must therefore act with utmost good faith). In this case, appellant fails to explain how construing a petition for habeas corpus as a petition for postconviction relief affects his substantive rights. Indeed, had his attorney not agreed to treat the petition as for postconviction relief, the petition would likely have been dismissed because it was filed in the wrong county. *See* Minn.Stat. § 589.02 (2000); *State ex rel. Flores v. Tahash,* 278 Minn. 431, 432, 153 N.W.2d 343, 343 (1967) (providing relator could elect to proceed on petition for habeas corpus in county where detained or dismiss that petition and proceed under postconviction remedy act in county where convicted). Under these circumstances, we hold that the district court did not err in construing the petition for writ of habeas corpus as a petition for postconviction relief.

## II.

Appellant seeks application of a different standard for harmless error than that applied in his direct appeal, and claims that under the proper standard he is entitled to a new trial. We acknowledged in *Juarez* that in appellant's direct appeal we inadvertently misstated the significance of the strength of the evidence of guilt in harmless error analysis. 572 N.W.2d at 291 n. 6. We therefore proceed to apply the proper standard to the facts of appellant's case.

■ Appellant alleges that the proper harmless error standard is set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Sullivan v. Louisiana*, 508 U.S. 275, 278–79, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). We relied on these decisions in *Juarez* to clarify that harmless error analysis is more appropriately termed "harmless error impact analysis," because it is the effect of the error on the verdict that the appellate court considers. 572 N.W.2d at 291. In *Sullivan*, the United States Supreme Court stated:

> [T]he question [*Chapman*] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. Harmless-error review looks, we have said, to the basis on which the jury *actually rested* its verdict. The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078 (citations and quotations omitted). Accordingly, when applying the *Chapman* harmless error test, we "look to the basis on which the jury rested its verdict and determine what effect the error had on the actual verdict." *State v. Jones*, 556 N.W.2d 903, 910 (Minn.1996). If the verdict was surely unattributable to the error, the error is harmless beyond a reasonable doubt. *Id.; Juarez*, 572 N.W.2d at 292.

■ Therefore, the question in this case is: what effect did the jury's hearing about and seeing the erroneously admitted evidence of the Johnson attempted murder have on the verdict? In applying this test, we consider the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether the defense effectively countered it. *State v. Ferguson*, 581 N.W.2d 824, 833 (Minn.1998).

■ In this case our focus is not on *all* evidence of the Johnson attempted murder, as some evidence of the attempted murder was admissible either as "immediate episode" evidence pursuant to *State v. Spreigl*, 272 Minn. 488, 497, 139 N.W.2d 167, 173 (1965), or as other crime evidence relevant to the issue of identity or motive, pursuant to Minn. R. Evid. 404(b). *Townsend I*, 546 N.W.2d at 296. What was problematic was the extensive evidence of the Johnson crime scene including multiple photographs showing bloody walls and furniture, the evidence admitted regarding the nature of Johnson's injuries, and the fact of Johnson's pregnancy. *Id.* at 296–97. It was this evidence that we determined was improperly admitted because its probative value was substantially outweighed by the danger of unfair prejudice. *Id.*

Applying the "surely unattributable to the error" standard from *Juarez* to the record below leads to the conclusion that the verdict was surely unattributable to the wrongfully admitted evidence. Specifically, the manner in which the evidence was presented suggests that the jury would not have focused unduly on this evidence. The trial included extensive testimony regarding DNA, ballistics, and an arson investigation. While several witnesses described the bloody scene at Johnson's home, that evidence was not the focus of any one witness' testimony. The evidence was not disputed, so the jury's attention was not directed to it by the parties advocating a particular version of the facts. Johnson's testimony focused on her contact with Koch–Wilson on October

30–31, and not significantly on her own physical state as a result of the attack.

Moreover, in opening statements counsel did not mention in any detail Johnson's injuries or the state of her home. In a 36-page closing statement, the prosecutor described [2] but did not dwell on the nature of Johnson's injuries, and mentioned only briefly the condition of the home.[3] Appellant's counsel made the only reference in closing argument to Johnson being pregnant. Thus, applying the considerations set forth in *Juarez*, we hold that the verdict was surely unattributable to the erroneously admitted evidence. *See Juarez*, 572 N.W.2d at 292.

■ In addition, although the court cannot focus only on evidence of guilt in the harmless error analysis, "overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict." *Id.* at 291. Therefore, the evidence of guilt that this court focused on in *Townsend I* remains a relevant consideration in harmless error analysis. That evidence included: 1) blood matching the victim's DNA found on the floor of the back seat of a car registered to appellant; 2) evidence that appellant was with the victim on the night of her death and was the last person to see her alive; 3)

evidence that the ammunition found in appellant's duffel bag was of the same caliber as that taken from the victim's body; and 4) evidence of appellant's flight after the murder. 546 N.W.2d at 297. The strength of this evidence makes it less likely that the erroneously admitted evidence affected the verdict in this case.

Because no witness dwelled significantly on the erroneously admitted evidence; counsel did not address the erroneously admitted evidence to any significant degree in opening or closing statements; and evidence of guilt was strong, we conclude that the verdict was surely unattributable to the erroneously admitted evidence. *See Ferguson*, 581 N.W.2d at 833; *Juarez*, 572 N.W.2d at 292. As such, the district court did not abuse its discretion in denying appellant a new trial.

Affirmed.

---

2. The prosecutor stated in closing:

So when Lisa Johnson places the marijuana in the bag, as she is leaned down to put it in, he has taken the gun out, puts it to her face, fires off a round into her jaw. She is reeling from this shot, and he figures, "This isn't a killing shot." So he puts one where it's going to work, behind her ear into her skull; fires a second one off.

This time Lisa is probably dropping. And by the time he fires the third shot off, he essentially misses her skull, didn't hit her because we know that bullet went through the wall and was found in the utility room.

The couch blanket containing the blood. The most obvious stain of blood found indicates she most probably laid there and bled for awhile, until she gained enough consciousness to move and to seek help at that point.

The defendant takes the marijuana and leaves, goes back and rendezvous with Candis Koch.

3. The prosecutor mentioned the state of Johnson's home twice: "And they described what they saw. They saw a home that had blood smears on the wall, as if somebody had been feeling their way through the house touching the walls." The prosecutor also stated, "Sergeant Mortenson * * * saw the shell casings, he saw the blood smears."