A.C. FORD, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A04–282.

Supreme Court of Minnesota.

Jan. 13, 2005.

## OPINION

BLATZ, Chief Justice.

A.C. Ford appeals from the postconviction court's denials of his third and fourth petitions for postconviction relief. On May 28, 1993, a jury found Ford guilty of first-degree premeditated murder and first-degree murder of a peace officer in connection with the shooting death of Minneapolis Police Officer Jerome Haaf. *State v. Ford*, 539 N.W.2d 214, 217 (Minn.1995), *cert. denied*, 517 U.S. 1125, 116 S.Ct. 1362, 134 L.Ed.2d 529 (1996). Ford was also found guilty of attempted first-degree murder of Gerald Lubarksi, a citizen bystander to the Haaf shooting. *Id.* On direct appeal, we affirmed Ford's convictions but reversed and remanded on a sentencing issue.[1] *Id.* Subsequently, Ford filed four petitions for postconviction relief, all of which were denied by the postconviction court. Ford began to appeal the denials of his first and second petitions for postconviction relief, but did not perfect the appeals. The postconviction court denied Ford's third petition on March 27, 2003, but Ford did not file a motion to amend the petition until November 20, 2003. Because there was no pending petition at the time, the postconviction court treated the November 20 motion as a fourth petition for postconviction relief (hereinafter "fourth petition"). In the fourth petition, Ford claimed that two communications between the judge and the jury during jury deliberations violated his right to be present at trial. The postconviction court denied relief without holding an evidentiary hearing. Ford filed a notice of appeal from the denials of his third and fourth petitions on February 25, 2004. We hold that we lack jurisdiction over the untimely appeal from Ford's third petition for postconviction relief and affirm the denial of Ford's fourth petition for postconviction relief without an evidentiary hearing.

---

1. We reversed the part of Ford's sentence that vested discretion in the Minnesota Department of Corrections to modify Ford's consecutive sentences to a concurrent sentence if he dedicated half of his earnings to a victim's reparations fund. *Ford*, 539 N.W.2d at 230–31. On remand, Ford was resentenced to consecutive sentences of life and twenty years.

## I.

Before we address the substance of Ford's claims, we must first address whether we have jurisdiction over Ford's appeal from the March 27, 2003 denial of his third petition for postconviction relief. Ford did not file his notice of appeal until February 25, 2004, almost eleven months after the postconviction court denied relief. Under Minn. R.Crim. P. 29.03, subd. 3, a petitioner must appeal a final order in a postconviction proceeding within 60 days after entry of that order. For good cause, one extension of 30 days may be granted. *Id.*

Ford argues that we should consider his untimely appeal because he alleges that he did not receive notice of the entry of the postconviction court's order denying his third petition. We have held, however, that the time requirements for the filing of an appeal are jurisdictional. *See, e.g., State v. Parker,* 278 Minn. 53, 55, 153 N.W.2d 264, 266 (1967). Even when a party has not received notice of the entry of an order, the court has not extended the time for appeal. *See Tombs v. Ashworth,* 255 Minn. 55, 62, 95 N.W.2d 423, 428 (1959) (holding that failure of the clerk to comply with Rule 77.04 requiring service of notice of entry of judgment does not extend the time for appeal); *State v. Scott,* 529 N.W.2d 11, 12 (Minn.App.) (stating that the court cannot extend the time to appeal even when defendant did not have notice of entry of the order), *rev. denied* (Minn. March 14, 1995); *accord United States v. Robinson,* 361 U.S. 220, 229–30, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960) (filing of notice of appeal in criminal case after expiration of time prescribed did not confer jurisdiction of the appeal even though the later filing was the result of excusable neglect). Accordingly, we hold that we lack jurisdiction over Ford's untimely appeal from the denial of his third postconviction petition.

## II.

Recognizing that we lack jurisdiction over Ford's appeal of his third petition for postconviction relief, the remaining issue is whether the postconviction court erred when it denied, without an evidentiary hearing, Ford's fourth petition for postconviction relief. Specifically, the fourth petition sets forth his claims that two separate instances of communication between the judge and the jury occurred outside of open court and without Ford's knowledge, consent, or presence and therefore violated his right to be present at trial. The postconviction court denied relief as to both claims.

A full statement of the underlying facts in this case is set forth in our decision on Ford's direct appeal. *Ford,* 539 N.W.2d at 217. To provide a context for the present appeal, however, the following additional facts are necessary. On May 28, 1993, during jury deliberations, the jury sent two written notes to the substitute trial judge.[2] The first note, sent at 4:22 p.m. and written directly on a copy of the jury instructions, concerned the transferred intent instruction relating to the attempted murder of Lubarski. The court's instruction to the jury on the "intent element" of attempt to commit first-degree murder was as follows:

> [The] defendant or another aided and abetted by the defendant intended to commit the crime of murder in the first degree. The statutes of Minnesota define that crime as follows: whoever

2. One judge presided over the trial, but a second judge filled in for the first judge while the jury deliberated. The second judge received both jury communications at issue here.

causes the death of a human being with premeditation and with the intent to effect the death of the person or another is guilty of murder in the first degree.

With respect to the instruction's use of the term "human being," a juror wrote: "Who is this in reference to? Haaf or Lubarski?" Referring to the term "person or another," a juror wrote: "Does this mean Haaf or Lubarski?"

Further, on the jury instruction defining "attempt to commit a crime," a juror circled the sentence which stated: "An act by a person who intends to commit a crime is an attempt if the act itself clearly indicates the intent to commit that specific crime and if [it] tends directly to accomplish the crime." Within the circled sentence, the juror underlined the word "specific" and wrote below it: "Does the intent have to be specifically against Lubarski?"

Upon receipt of the jury questions and in Ford's absence, the substitute judge contacted the attorneys for both parties. The judge conferred with the attorneys via a telephone conference that was recorded by a stenographic court reporter. After consensus was reached, the judge sent a reply note to the jury stating: "You must rely on all the instructions as given to you by [the trial judge] in answering the questions you have posed. The answer to your question is contained in the instructions."

Later, at approximately 4:54 p.m., the jury sent the trial judge a second note: "We, the jury for case no. 92095955, request that our deliberation materials as well as a copy of each of the charges and instructions to the jury be returned to us by contacting juror # 7 at [telephone number redacted]."[3] Without contacting counsel, the substitute judge responded in writing at 5:00 p.m. that "[a]ll materials in the jury room will be preserved pending resolution by [the trial judge]." After the jury returned its verdict, the substitute judge referred to the second note on the record stating: "a request was sent out about the various materials that apparently you have in the jury room. I am not sure what it is, notes or whatever. And the request made came out that those be preserved."

■ Ford's claims of error arise out of the fact that he was not present when the trial court received and responded to these two communications from the jury. When reviewing a postconviction decision, we must determine "whether there is sufficient evidence to sustain the postconviction court's findings," and we will not disturb a postconviction court's decision absent an abuse of discretion. *Sanders v. State*, 628 N.W.2d 597, 600 (Minn.2001) (citing *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995)). A petitioner seeking postconviction relief has the burden of establishing by "a fair preponderance of the evidence" the facts alleged in the particular petition. Minn.Stat. § 590.04, subd. 3 (2002); *see also Sanders*, 628 N.W.2d at 600. A petitioner's allegations must be "more than argumentative assertions without factual support." *Hodgson*, 540 N.W.2d at 517 (quoting *Beltowski v. State*, 289 Minn. 215, 217, 183 N.W.2d 563, 564 (1971)).

■ As to the first communication from the jury, regarding the jury instructions and the definitions of words contained therein, Ford claims that the trial court erred by failing to have him present and by failing to make a contemporaneous record of his waiver of the right to be present. The state concedes it was error not to secure Ford's presence or, in the alternative, his waiver of his right to be present. However, the state argues that Ford

---

**3.** The original note contains a phone number and is signed by a juror. To preserve the anonymity of the juror, the telephone number was redacted.

should have raised the issue on direct appeal and that the claim is precluded under our decision in *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976). The postconviction court agreed with the state's position and found that Ford's claim was barred.

■ In *Knaffla,* we held that once a direct appeal has been taken, "all matters raised therein and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. at 252, 243 N.W.2d at 741 (*Knaffla* rule). There are two exceptions to this rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require relief. *Ives v. State,* 655 N.W.2d 633, 636 (Minn.2003). The second exception may be applied when fairness so requires and the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal. *Fox v. State,* 474 N.W.2d 821, 825 (Minn.1991).

Ford did not raise this first jury communication on direct appeal or in any of his previous three petitions for postconviction relief. Nevertheless, Ford argues that the *Knaffla* exception allowing review in the "interests of justice" applies in this case. Specifically, he avers that he did not deliberately or inexcusably fail to raise the issue because he was forced to "send out" his transcript from his maximum-security prison cell due to prison regulations limiting the amount of paper prisoners may keep in their cells. Due to this prison regulation, Ford claims he did not have his transcript long enough to discover the error in the record. To support his contention that he was refused additional access to his transcript, Ford attached an order from our court denying, *inter alia,* his

motion for an order to return all legal materials to him. Our order denying his motion, however, is dated after his first postconviction petition was denied and his appeal was dismissed due to inactivity. Further, Ford concedes in his brief to this court that he had access to his transcript during his direct appeal. Therefore, the record lacks persuasive evidence that Ford had inadequate opportunity to present his claims in his direct appeal. We conclude that the "interests of justice" exception to *Knaffla* does not apply, and hold that the postconviction court did not err when it denied Ford's claim on this issue.

■ Ford's second claim again concerns his absence when the substitute judge communicated with the jury. In the jury's second written communication with the judge, the jury requested that their "deliberation materials as well as a copy of each of the charges and instructions to the jury be returned to us by contacting juror # 7 at [phone number redacted]." Without contacting the attorneys or assuring Ford's presence, the judge replied to the jury: "All materials in the jury room will be preserved pending resolution by [the trial judge]."[4] In denying Ford's claim, the postconviction court relied on *State v. Hendry,* 636 N.W.2d 158, 164 (Minn.App. 2001), *rev. denied* (Minn. Jan. 29, 2002), and concluded that the jury's request to return their deliberation materials was a housekeeping question not related to the substantive issues in the case, and therefore not error.

■ Ford argues that his absence from this written communication between the judge and the jury violated his right to be present at trial as protected by the

4. This communication between the judge and the jury, as noted above, is referenced briefly in the trial record and therefore arguably barred by *Knaffla.* For purposes of this appeal, however, we accept the state's concession that review of the communication "is not barred under *Knaffla* because it does not appear *clearly* in the record." (emphasis added).

United States Constitution and Minn. R.Crim. P. 26.03. A defendant's constitutional right to be present is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). In jury communications, Sixth Amendment rights are not at issue because there are no witnesses to confront. The due process right of the defendant "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), however, may be implicated. The defendant's due process right at issue consists of the right to be present at all critical stages of trial. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *id.* at 748, 107 S.Ct. 2658 (Marshall, J., dissenting). Our court has recognized that Minn. R.Crim. P. 26.03, subd. 1(1), requiring defendant's presence "at every stage of the trial," provides a broader right to be present than the right guaranteed by the United States Constitution. *State v. Thompson*, 430 N.W.2d 151, 152–53 (Minn.1988).

■ The interpretation of the rules of criminal procedure is a question of law subject to de novo review. *State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn.1998). Minnesota Rules of Criminal Procedure 26.03, subd. 19(2) and (3) specifically govern the procedure for communicating with a deliberating jury and provides that when a deliberating jury "requests a review of certain testimony or other evidence" or "desires to be informed on any point of law, the jurors, after notice to the prosecutor and defense counsel, shall be conducted to the courtroom." Applying the language of the rule to the facts before us, it is clear that the jury's request for preservation of the deliberation materials was not a request to review evidence or testimony or to receive instructions on the law. Therefore, the communication at issue here is not governed by subdivision 19, but must be analyzed under the more general requirement of subdivision one that defendant must be present at "every stage of the trial."

■ Generally, responding to a deliberating jury's question is a stage of trial under the Minnesota Rules of Criminal Procedure. *State v. Sessions*, 621 N.W.2d 751, 755 (Minn.2001) (citing *State v. Hudspeth*, 535 N.W.2d 292, 295 (Minn.1995)). Thus, the general rule in Minnesota is that a trial judge should have no communication with the jury after deliberations begin unless that communication is in open court and defendant is present. In *Sessions*, this court held that "the trial court erred by engaging in substantive communications with a deliberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor * * *." 621 N.W.2d at 753.

■ This court, however, has not directly addressed whether communication between the judge and the jury outside defendant's presence violates defendant's right to be present at all stages of trial under Minn. R.Crim. P. 26.03 when the communication at issue relates solely to housekeeping matters. Although not central to our holdings, we have indicated in two prior cases that housekeeping matters can be treated differently than matters related to the law and evidence of the case. *State v. Greer*, 635 N.W.2d 82, 93 n. 3 (Minn.2001); *State v. Kelley*, 517 N.W.2d 905, 908 (Minn.1994). For example, in *Kelley* we stated that the "trial judge * * * should not communicate with a juror or the jury on any aspect of the case itself

(as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to be present." 517 N.W.2d at 908 (quoting the ABA Standards for Criminal Justice § 15–3.7(b) (1986) (currently ABA Standards for Criminal Justice § 15–4.1(b) (1996)).[5] Rule 26.03 is designed to protect defendants' Sixth and Fourteenth Amendment rights. *See Gagnon*, 470 U.S. at 526, 105 S.Ct. 1482. Communications about routine housekeeping matters do not fall within its embrace. We hold, therefore, that when a judge communicates in writing with the jury about a housekeeping matter, the defendant's right to be present at trial is not violated. We caution, however, that any doubt regarding whether a communication relates to a housekeeping or substantive matter should be resolved in favor of defendant's presence. In addition, we emphasize that a record should be made of all communication between the judge and jury, regardless of its substance. *See Sessions*, 621 N.W.2d at 756.

With this distinction between substantive and housekeeping matters in mind, we must determine whether, in fact, the communication at issue here was related to a housekeeping matter, as the postconviction court found, or to substantive matters, as Ford argues. We conclude that the postconviction court was correct in its determination that the jury's request for preservation of the deliberation materials was merely a housekeeping matter. The trial court's response to the jury communication simply indicated to the jury, in writing, that the materials would be preserved. Accordingly, we hold that the postconviction court did not abuse its discretion when it determined that the second jury communication related solely to a nonsubstantive housekeeping matter.

 Ford's last claim as to his fourth petition for postconviction relief is that the postconviction court erred by failing to hold an evidentiary hearing. Under Minn.Stat. § 590.04, subd. 1 (2002), the court must grant a hearing on a postconviction petition unless the petition, files and record "conclusively show that petitioner is entitled to no relief * * *." *See also Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995) (citing *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990)). A postconviction court is not required to hold an evidentiary hearing unless there are material facts in dispute which must be resolved in order to determine the postconviction claim on its merits. *King v. State*, 562 N.W.2d 791, 794 (Minn.1997) (citing *Hodgson*, 540 N.W.2d at 517). Any doubt as to whether to hold an evidentiary hearing should be resolved in favor of the party's request therefor. *State ex rel. Roy v. Tahash*, 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967).

In the present case, there are no disputed facts. Ford's petitions for postconviction relief, taken together with the record before us, "conclusively show" that Ford is not entitled to postconviction relief. We therefore hold that the postconviction court did not abuse its discretion in denying Ford's fourth petition for postconviction relief without holding an evidentiary hearing.

Affirmed.

---

**5.** The commentary to this ABA Standard further states that it is not "intended to apply to communications to or from jurors involving only housekeeping matters," but also notes that "to the extent practicable, even housekeeping matters should be reduced to writing and communicated on the record in order to eliminate future misunderstandings of any communications." *Id.*

ANDERSON, G. BARRY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.