**Adl EL–SHABAZZ, f/k/a A.C. Ford, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A07–2205.

Supreme Court of Minnesota.

Aug. 7, 2008.

Jordan S. Kushner, Minneapolis, MN, for appellant.

Lori Swanson, Atty. Gen., St. Paul, MN, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

Appellant Adl El–Shabazz (El–Shabazz), formerly known as A.C. Ford, appeals the postconviction court's summary denial of his petition for postconviction relief. We affirm.

On September 25, 1992, Minneapolis Police Officer Jerome Haaf was shot to death by two or three young males at the Pizza Shack restaurant in south Minneapolis.[1] *State v. Ford,* 539 N.W.2d 214, 219 (Minn. 1995).

At trial, several witnesses testified for the State. Dawn Jones, the girlfriend of one of the men involved, testified that she was present when El–Shabazz, Monterey Willis (Monterey), Mwati "Pepi" McKenzie, Shannon Bowles, and Samuel "Sharif" Willis (Sharif) discussed a plan to shoot a bus driver or a police officer. *Id.* at 218. Richard, a minor, testified that he met up with El–Shabazz, McKenzie, Bowles, Monterey, and Jones the night of the shooting. *Id.* He further testified that El–Shabazz first asked if everyone was ready to go shoot a bus driver. *Id.* El–Shabazz then suggested they go "do the Pizza Shack." *Id.* According to Richard, El–Shabazz gave a gun to McKenzie. *Id.* El–Shabazz then drove Bowles and Monterey in a truck, and Richard and McKenzie rode together in a car. *Id.* At a corner near the Pizza Shack, McKenzie and Bowles got out of the vehicles and walked toward the restaurant. *Id.* at 219. As instructed by El–Shabazz, Richard circled the block to pick up McKenzie and Bowles but did not see them. *Id.* He found them at the house of Ed Harris, an acquaintance. *Id.* McKenzie then told Richard that he shot a cop. *Id.* Harris's wife, Loverine Harris, testified that her husband provided a change of clothes for McKenzie and Bowles. *Id.*

McKenzie went to Chicago after the murder. *Id.* According to Wyvonia Williams, he became afraid for his life and admitted details of the shooting to Williams. Among the details he shared were that Sharif ordered the hit on the police officer and that El–Shabazz was in charge of carrying out the hit. *Id.* McKenzie also told Williams that he rode with El–Shabazz and Monterey to the Pizza Shack. *Id.* Other evidence admitted against El–Shabazz included a letter Bowles wrote to El–Shabazz, stating "I'm not V. Lord. This breaks our link of me and you, also that statement of you giving me orders about whatever. * * * I was nowhere around you that night. [Richard] is saying these things to clear himself in the Harris killing. He doesn't know me." *Id.* at 220. Two weeks after Officer Haaf's

1. The facts surrounding the murder are detailed in our opinions affirming El–Shabazz's conviction on direct appeal, *State v. Ford,* 539 N.W.2d 214 (Minn.1995), and affirming the denial of El–Shabazz's fourth petition for postconviction relief, *Ford v. State (Ford II ),* 690 N.W.2d 706 (Minn.2005).

murder, Ed Harris was shot and killed. *Id.* Police believed other Vice Lords had murdered him to prevent him from leaking information about the Haaf murder. *Id.*

On his direct appeal, El–Shabazz asserted that the district court erred by (1) impaneling an anonymous jury; (2) admitting statements made to the police; (3) admitting the hearsay testimony of Wyvonia Williams; (4) refusing to allow El–Shabazz to cross-examine a witness regarding a withdrawn plea agreement; (5) sustaining the State's *Batson* challenge; and (6) imposing a sentence that was contrary to law. *Id.* at 217. He also claimed that the evidence was insufficient to support the jury's verdicts and that the prosecutor committed misconduct during closing arguments. *Id.* We concluded that the admission of Williams' testimony was harmless error. *Id.* at 227. We affirmed El–Shabazz's conviction, but reversed and remanded on one of the sentencing issues. *Id.* at 231. The district court then sentenced El–Shabazz to consecutive sentences of life imprisonment and 20 years. *Ford v. State* (*Ford II*), 690 N.W.2d 706, 708 n. 1 (Minn.2005).

El–Shabazz filed two petitions for postconviction relief, but did not perfect his appeal of the court's denial of the claims presented in each petition. *Id.* at 708. El–Shabazz filed a third petition for postconviction relief, which the postconviction court denied on March 27, 2003. *Id.* El–Shabazz then filed a motion to amend the third petition on November 20, 2003, and

the postconviction court treated the motion as a fourth petition. *Id.* In it, El–Shabazz claimed that two instances of communication between the judge and jury during jury deliberations, without El–Shabazz's presence or his waiver of the right to be present, violated his right to be present. *Id.* at 710. The postconviction court denied relief without an evidentiary hearing, and El–Shabazz appealed the denial of both his third and fourth petitions. *Id.* at 708. We concluded that (1) we did not have jurisdiction over his untimely appeal from the denial of the third petition; (2) El–Shabazz's claim of error regarding the first communication between the judge and jury was procedurally barred; (3) the second communication between the judge and jury related to "housekeeping" and not substantive issues and, therefore, did not violate El–Shabazz's right to be present; and (4) the postconviction court did not err in denying relief without a hearing. *Id.* at 709–13.

In his fifth pro se petition for postconviction relief filed July 26, 2007, El–Shabazz sought relief due to (1) ineffective assistance of counsel because his counsel waived the right for El–Shabazz to be present during the communications between the judge and jury; (2) prosecutorial misconduct in allowing perjured testimony and not disclosing evidence relating to inducements provided to witnesses; and (3) two communications between the judge and jury during jury deliberations.[2] On July 27, 2007, El–Shabazz's counsel sub-

---

**2.** El–Shabazz's argument that two communications between the judge and jury during jury deliberations entitle him to postconviction relief is a claim we considered and rejected on his appeal from the denial of his fourth postconviction petition. *Ford II,* 690 N.W.2d at 710–13. Because his argument for ineffective assistance of counsel is based on his counsel's waiver of El–Shabazz's right to be present at a judge-jury communication, an argument that is both procedurally barred

and meritless, his claim for ineffective assistance of counsel also fails. *See Wilson v. State,* 582 N.W.2d 882, 885 (Minn.1998) (stating that a petitioner is entitled to a hearing to develop the facts supporting his ineffective assistance claims only if he alleged facts that would "affirmatively show that his attorney's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different").

mitted a supplemental petition arguing that El–Shabazz is entitled to postconviction relief in light of several of our subsequent decisions. On appeal, counsel specifically argues that our decisions in *State v. Juarez,* 572 N.W.2d 286 (Minn.1997), and *Townsend v. State (Townsend II)*, 646 N.W.2d 218 (Minn.2002), which were decided after El–Shabazz's conviction, applied a "stricter" standard for evaluating harmless error.

The postconviction court denied the petition in September 2007, concluding that the claims had all been raised and denied in previous petitions and on appeal. Nonetheless, the court considered whether El–Shabazz's earlier claim based on Williams' testimony merited relief under the stricter *Juarez/Townsend II* harmless error standard and concluded that the erroneous admission of the testimony was still harmless under that standard. El–Shabazz appealed. We affirm.

Under Minn.Stat. § 590.01 (2006), a petitioner may commence a proceeding for postconviction relief if he claims that his conviction violated the Constitution or state laws. However, "[o]nce a direct appeal has been taken, all claims raised in that appeal, all claims known at the time of that appeal, and all claims that should have been known at the time of that appeal will not be considered in a subsequent petition for postconviction relief." *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007) (citing *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)). There are two exceptions: (1) when an issue is "so novel that there was no legal basis for the claim at the time of appeal," *Sutherlin v. State,* 574 N.W.2d 428, 432 (Minn.1998), and (2) " 'in limited situations when fairness so requires and when the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal.' " *Id.* (quoting

*Russell v. State,* 562 N.W.2d 670, 672 (Minn.1997)).

When reviewing postconviction proceedings, we have an "obligation to extend a broad review of both questions of law and fact." *Butala v. State,* 664 N.W.2d 333, 338 (Minn.2003) (internal quotation marks omitted). We review legal issues de novo, but the review of factual matters is limited to "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.* A petitioner has the burden of establishing by a preponderance of the evidence facts that would warrant relief. *State v. Rainer,* 502 N.W.2d 784, 787 (Minn.1993).

## I.

In order to address El–Shabazz's argument that he is entitled to retroactive application of the stricter *Juarez/Townsend II* harmless error standard, we must first consider the history of both his case and the *Juarez* and *Townsend* opinions.

On direct appeal, we concluded that Williams' hearsay testimony should have been suppressed because it did not qualify as an exception to the hearsay rule as a statement against penal interest. *Ford,* 539 N.W.2d at 227. In concluding that admitting Williams' testimony was harmless error, we said that

[t]he trial court's error in admitting Wyvonia Williams' statements relating to [El–Shabazz] require[s] reversal only if the admission was not harmless beyond a reasonable doubt. In the past where we have found the weight of the evidence is so great that it justifies the verdict regardless of the erroneous admission, we have concluded the erroneous admission was harmless. Similarly, in this case, we conclude that the weight of the evidence is so great that the admission of this information was at most harmless.

*Id.* (Citations omitted.) We applied this harmless error test in *State v. Townsend (Townsend I )*, 546 N.W.2d 292, 297 (Minn. 1996) (" 'Harmless beyond a reasonable doubt' does not mean there must be absolutely no doubt of guilt, rather it means that the weight of all the other evidence is such that it 'justifies the verdict regardless of the erroneous admission * * *.' " (quoting *Ford,* 539 N.W.2d at 227)).

Subsequently, in *Juarez,* 572 N.W.2d at 291 n. 6, we commented that

> on occasion we have inadvertently misstated the significance of the strength of the evidence of guilt in harmless error analysis. An example is our decision in *Townsend* * * *. To the extent that decision, or any other decision of this court or the court of appeals, misstates the significance of the strength of the evidence in harmless error analysis, the decision should not be followed.

(Citation omitted.) We applied the following standard to the facts of that case, which involved the erroneous admission of the defendant's statement that he would "have to get a lawyer next": "If the verdict rendered is 'surely unattributable' to the error, then the error is harmless beyond a reasonable doubt and the conviction stands." *Id. at* 292.

After *Juarez* was decided, Townsend sought a writ of habeas corpus, which the district court treated as a petition for postconviction relief, seeking application of a different standard for harmless error than had been applied in his direct appeal. *Townsend II,* 646 N.W.2d at 219. We noted in *Townsend II* that in *Juarez* we said we "[had] inadvertently misstated the significance of the strength of the evidence

of guilt in harmless error analysis" in *Townsend I. Id.* at 222. We therefore proceeded to apply the stricter *Juarez* standard. *Id.* at 223. We considered "the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether the defense effectively countered it" before concluding that "the verdict was surely unattributable to the wrongfully admitted evidence." *Id.*

El–Shabazz now argues that the district court's error in admitting Williams' hearsay testimony should be reviewed again under what he asserts is a new standard of harmless error. He asserts that our 1995 decision in *Ford* is invalid due to the subsequent cases acknowledging inadvertent misstatement of the harmless error standard. He requests that we reconsider the decision in the same way we reconsidered harmless error under the stricter standard in *Townsend II.* He asserts that he did not deliberately and inexcusably fail to raise this issue in prior petitions because "[t]he law was still developing at the time." [3]

We conclude that El–Shabazz's argument is procedurally barred by *Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741. El–Shabazz filed three postconviction petitions (not including this one) after *Juarez* was decided in December of 1997. Two of the three petitions were filed after *Townsend II* was decided in June of 2002. Therefore, El–Shabazz knew or should have known of any arguments related to the stricter standard, and any claims should have been raised in previous appeals. Furthermore, El–Shabazz has not shown that either *Knaffla* exception applies.

---

**3.** El–Shabazz further asserts that his prior petitions were pro se and he therefore did not have the benefit of legal counsel "to enable him to raise this evolving and esoteric legal issue." However, we have never recognized a litigant's pro se status as a basis for satisfying the "interests of justice" exception to a *Knaffla*-barred claim, and we reject El–Shabazz's claim that this issue was beyond his grasp as a pro se litigant.

El–Shabazz claims that two cases, *State v. Al–Naseer*, 690 N.W.2d 744 (Minn.2005), and *State v. Caulfield*, 722 N.W.2d 304 (Minn.2006), continued to develop the new rule, thereby postdating his earlier petitions. However, examination of those two cases shows that neither case did anything more than provide more thorough analysis and application of the factors enunciated in *Juarez* and *Townsend II*.[4]

■ Even if we assumed for the sake of argument that the stricter *Juarez/Townsend II* harmless error standard should be applied in the interests of fairness and justice, El–Shabazz's claim would fail on its merits. In reviewing whether the admission of inadmissible evidence was harmless error, we consider whether (1) the evidence was presented in a manner that gave it significant focus; (2) the State dwelled on the evidence in opening and closing arguments or in examining witnesses; and (3) the evidence was either highly persuasive or circumstantial. *Caulfield*, 722 N.W.2d at 317.

El–Shabazz argues that we cannot conclude that the admission of Williams' testimony was harmless error because (1) only Williams and a juvenile witness provided direct evidence of El–Shabazz's involvement in the murder; (2) Williams' testimony undermined the defense's theory that Sharif set El–Shabazz up to take the blame for the murder; (3) Williams was "a particularly credible and damaging witness"; and (4) the prosecutor referred to Williams' testimony in closing argument.

We do not agree. Williams' testimony clearly was not from her own personal knowledge, was based on information received from an emotionally reactive participant in the murder (McKenzie, who was scared other Vice Lords were going to kill him), conflicted with other witnesses' descriptions of details at trial, and was referenced in the closing only briefly, along with a review of the testimony of numerous witnesses. At trial, the juvenile witness was the State's major witness who was a participant and had direct information of El–Shabazz's involvement. The defense arguably effectively countered Williams' testimony by clarifying her lack of personal knowledge and by pointing out inconsistencies between her testimony and the testimony of the juvenile witness. Finally, the other evidence of guilt was strong. As the State notes, we upheld a challenge to the sufficiency of the evidence on direct appeal, noting there was direct evidence from one witness that El–Shabazz participated in a plan to shoot an officer, which was corroborated by numerous other witnesses, not including Williams. *Ford*, 539 N.W.2d at 225–26.

Therefore, even if El–Shabazz's argument that his case should be reconsidered under a stricter *Juarez/Townsend II* harmless error standard was not procedurally barred, we conclude that the admission of Williams' testimony would remain harmless error. We hold that El–Shabazz

---

4. El–Shabazz also argues that the stricter *Juarez/Townsend II* standard sets forth a new interpretation of harmless error and therefore is a watershed rule that should be applied retroactively to his case. However, neither *Juarez* nor *Townsend II* involves a new interpretation or law. The decision to apply a standard requiring consideration of factors other than just whether the overwhelming evidence of guilt was sufficient to outweigh the error was based in large part on our precedent, notably *State v. Roberts*, 296 Minn. 347, 353, 208 N.W.2d 744, 747–48 (1973). *Juarez*, 572 N.W.2d at 292. As we noted in *Juarez*, we were "clarify[ing]" the standard for harmless error. 572 N.W.2d at 291. Because we have not announced a new rule, El–Shabazz cannot overcome the "principle of finality which is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

is not entitled to postconviction relief based on the admission of Williams' testimony.

## II.

■ El–Shabazz also asserts that the postconviction court erred in failing to grant relief for the prosecution's failure to disclose inducements provided to two of the State's witnesses, Loverine Harris and Eugene McDaniels.[5] Our review of the record leads us to conclude that this claim was known to El–Shabazz prior to this appeal but was not raised successfully. El–Shabazz raised this claim in whole or in part in his first, second, and third postconviction petitions. El–Shabazz did not perfect appeals for the denials of his first three petitions. Therefore, El–Shabazz's argument that the prosecution failed to disclose favorable, impeaching evidence is *Knaffla*-barred, 309 Minn. at 252, 243 N.W.2d at 741. El–Shabazz raises no legally novel claims, and it is not apparent that there are any interests of justice that merit our consideration of his arguments.

## III.

■ Finally, we address El–Shabazz's contention that the postconviction court erred by failing to hold an evidentiary hearing on his claims. Generally, a court must hold a hearing on a postconviction petition unless "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2006). If no material facts are in dispute, then the court need not hold an evidentiary hearing. *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995).

Here, El–Shabazz's claims are barred by the *Knaffla* rule and are meritless. Therefore, no evidentiary hearing was required, as the files and records conclusively show that El–Shabazz is not entitled to relief. Accordingly, we hold that the postconviction court did not err in summarily denying El–Shabazz's claims.

Because El–Shabazz has failed to show that he is entitled to postconviction relief on any of his claims, we affirm his conviction.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.

GILDEA, J., took no part in the consideration or decision of this case.

---

5. In his pro se supplemental brief, El–Shabazz also claims that the prosecution failed to disclose that another witness, Percy Melton, was a paid government informant-witness in an unrelated murder trial. However, El–Shabazz did not raise this claim in his postconviction petition, and it was not considered by the postconviction court. Therefore, we decline to address the argument here.