**Nantambu KAMBON, a/k/a Shannon Bowles, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C2–97–2261.

Supreme Court of Minnesota.

Aug. 6, 1998.

---

Keith Ellison, Legal Rights Center, Minneapolis, Robin K. Magee, Hamline University School of Law, St. Paul, for petitioner.

Robert Streitz, Asst. County Atty., Minneapolis, Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

## OPINION

STRINGER, Justice.

We consider here petitioner Nantambu Kambon's a/k/a Shannon Bowles petition for postconviction relief alleging a variety of errors regarding the trial judge's participation in a judges' meeting discussing use of an anonymous jury in petitioner's trial without either party present, a colloquy between the judge and jury during deliberations, and the totality of defects of his trial. The postconviction court denied relief without an evidentiary hearing and we affirm.

Following a two-week trial, the jury convicted petitioner of premeditated first-degree murder, Minn.Stat. § 609.185(1) (1994), first-degree murder of a peace officer, Minn.Stat. § 609.185(4) (1994), and first-degree attempted murder, Minn.Stat. § 609.17 (1994), in connection with the shooting of Minneapolis Police Officer Jerry Haaf and Gerald Lubarski at the Pizza Shack restaurant. We set forth a detailed statement of the facts of this case in our opinion in *State v. Bowles,* 530 N.W.2d 521 (Minn.1995) (*Bowles I* ).

On his direct appeal to this court petitioner challenged several aspects of the trial proceeding including the use of an anonymous jury, sufficiency of the evidence, denial of his motion for reconsideration of his motion for a new trial, and violation of his equal protection and due process rights because his trial

was a "racist proceeding." *Bowles I,* 530 N.W.2d at 525. After a careful review of the trial record we concluded that the trial court did not abuse its discretion by using an anonymous jury and that in any event no actual prejudice resulted for the petitioner. *Id.* at 532. We also held that the trial court did not err in denying petitioner's motion for a new trial, that there was sufficient evidence supporting the convictions, and that petitioner's argument regarding a "racist proceeding" was "specious." *Id.* at 534–35, 525 n. 1. Sua sponte, we considered the issue of whether the jury's verdict could have been impacted by race-based pressure on a juror and remanded for supplementation of the record on the issue. *Id.* at 535. Upon further review after remand, we determined that the verdict was the jury's true and correct verdict and affirmed petitioner's convictions. *State v. Bowles,* 533 N.W.2d 617 (Minn.1995) (*Bowles II* ).

Petitioner filed a petition for postconviction relief alleging that the trial judge was not fair or impartial evidenced by his participation in a judges' meeting regarding use of an anonymous jury in petitioner's trial without either party present, that petitioner's rights under the Sixth and Fourteenth Amendments were violated when he was denied the opportunity to be present at the judges' meeting and during the judge and jury's colloquy during jury deliberations, that the trial judge coerced a guilty verdict by his comments to the jury during the colloquy, that the trial judge discredited petitioner's defense theory of racial bias, and that petitioner was denied due process by the totality of defects at his trial.

Petitioner bases his argument on entitlement to a postconviction hearing on two circumstances, first, a *City Pages* newspaper article that alleged that the decision to impanel an anonymous jury in petitioner's trial occurred at a meeting of judges involved in the trials of the three Haaf defendants without either of the parties present, and second, the judge and jury colloquy during jury deliberations on July 1, 1993.

The postconviction court denied relief without an evidentiary hearing holding that the petition raised no material issues of fact and that the issues raised were procedurally barred because they either were or should have been raised below.

■ "A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case." *State v. Rainer,* 502 N.W.2d 784, 787 (Minn. 1993). Issues raised on direct appeal or known at that time will not be considered in a petition for postconviction relief. *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). An evidentiary hearing is required only if "facts are alleged which, if proved, would entitle a petitioner to the requested relief." *Fratzke v. State,* 450 N.W.2d 101, 102 (Minn.1990). Moreover, we will not disturb the postconviction court's decision absent an abuse of discretion. *Hanley v. State,* 534 N.W.2d 277, 278 (Minn.1995).

Turning first to the trial court's determination to proceed with an anonymous jury, petitioner argues that his due process rights were violated because the trial judge was not impartial based on a newspaper article in the *City Pages* claiming that the trial judge participated in a pretrial meeting with other judges and discussed the use of an anonymous jury in petitioner's case. Petitioner further asserts that his due process rights were violated because he was not present at this meeting. The state argues that we examined the issue of the anonymous jury on petitioner's direct appeal and held that the trial judge did not abuse his discretion and that no prejudice resulted; and since the issue has been addressed by this court, the state argues it is not appropriate for postconviction review.

■ We thoroughly addressed the use of an anonymous jury in petitioner's direct appeal and concluded that use of an anonymous jury in petitioner's trial satisfied the applicable standards assuring a fair and impartial jury and no actual prejudice resulted to petitioner. *Bowles I,* 530 N.W.2d at 532. Without repeating our earlier discussion, in summary we concluded that the use of an anonymous jury in petitioner's trial was properly within the discretion of the trial court because the jury needed protection

from external influences and the trial judge took reasonable precautions to minimize the prejudicial effect on the defendant. Petitioner's contentions that there was some impropriety in judges convening to discuss issues relating to this or any trial or that his due process rights were infringed because he was not present, are wholly without merit in the absence of a showing that the petitioner was prejudiced in some way.[1] *See Effinger v. State,* 380 N.W.2d 483, 487 (Minn.1986); *Broberg v. State,* 287 Minn. 66, 73, 176 N.W.2d 904, 909 (1970). Because we addressed this issue on direct appeal and concluded that there was no prejudice to defendant as a result of the anonymous jury, the postconviction court did not abuse its discretion in denying relief on this claim. *See also McKenzie v. State,* 583 N.W.2d 744, 749 (Minn.1998).

We turn next to petitioner's claim that the July 1, 1993 colloquy between the judge and jury during deliberations violated his due process rights because (1) he was not present during the colloquy, (2) the judge contradicted petitioner's theory of the case by stating that race was not an issue in the case, and (3) the judge's instructions to the jury coerced the guilty verdict.

According to trial defense counsel's affidavit, on July 1 the trial judge received a note: " juror # 4 needs to speak with judge." The trial judge declined to speak with the juror alone, but offered to speak with the entire panel. Defense counsel and the state's attorney met with the judge in chambers about the note and neither defense counsel nor the state objected to the judge addressing the jury alone to determine if they had any questions. Petitioner was not informed of the incident, nor was his presence requested in chambers.

The record of the colloquy reflects that the jury foreperson, juror # 24, told the judge:

> We've been deliberating and we since have come to a stalemate in a sense where we feel people could never change their minds to the way they're feeling to their decision,

and we're wondering, in a sense, what we do to correct it, in a sense just keep going and let time take its course or, that was kind of our question.

Juror # 4 said, "Everyone's pretty frustrated and upset, you know. Now people are implying, you know, it's a racial thing." The court observed that juror # 4 sounded tense and asked her to speak freely. Juror # 4 said, "I'll tell you later then," but the judge urged her to speak out—"Tell me now." The juror responded that "it was implied that if the defendant was white I would have had a different verdict, you know, and I really don't appreciate that. I've been here every day. I've taken my notes. I've given my point of view. What else could I possibly do?"

The trial judge asked the foreperson, "Do you think it's possible that, given additional time * * * it's possible the jury could arrive at a unanimous verdict?" The foreperson replied, "I do think we can for the point of, I think, right now we have frustration that's building and people are hesitant right now to just rehash the same old stuff again. They say they don't want to. I think we're stuck." The judge asked if the jury would like to recess for the evening, and juror # 23 said that although it wasn't clear that they could ever come to a conclusion, they needed "some time [alone] to rethink." The judge then spoke to the jury about the tension involved in a case like this:

> I want you to feel free to be open with one another in your deliberations. I am aware that there are concerns that we all feel as members of our community. Some of them involve race. I don't want to make believe that it doesn't exist as a concern within our community. Candidly, I don't believe it should be or is an issue in this trial and I want you to feel free to discuss all aspects of the case amongst yourselves.

A juror suggested that they be permitted to take their notes to the hotel and eat dinner separately that evening. Before the judge granted permission, the foreperson repeated that "we're just hopelessly deadlocked. * * * [W]e have people that are not willing

---

1. In *McKenzie v. State,* 583 N.W.2d 744 (Minn. 1998), we affirmed the postconviction court's denial of the petition for postconviction relief filed by Mwati Pepi McKenzie, another defendant in the Haaf murder trials, raising this same issue.

to start over and rehash the evidence." The judge acceded to the jury's request to send them back to the hotel with their notes, eat dinner separately, and come back in the morning to "see if there is any opportunity at that time for further discussion." The jury retired briefly, a vote was taken and the foreperson reported that they decided to "spend the night and reconvene tomorrow morning and make a decision then." There was no more communication between the jury and the court until three days later when the jury returned its verdict of guilty. When polled, each juror responded that the verdict was their true and correct verdict.

On petitioner's direct appeal, we considered sua sponte the issue of possible jury misconduct with regard to the concern expressed by juror # 4 and whether the jury's verdict was prejudiced in any way and remanded for supplementation of the record as to this concern. *Bowles I,* 530 N.W.2d at 535. Upon remand, the trial court again reviewed this aspect of the proceeding and submitted a memorandum that stated that all jurors spoke for themselves in the polling, and in the post-trial "decompression" meeting held in his chambers, attended by two psychologists and a law clerk, "particular mention was made (and appreciation expressed) for the court's allowing a recess to be taken" after the July 1 colloquy. In the memorandum the judge also reported that he specifically asked juror # 4 about "whether she continued to feel racial tension after the July 1 recess," and her response indicated that "her concern over the $racial thing' had abated and she felt no particular pressure to vote one way or another." We affirmed petitioner's conviction, concluding that we were satisfied that the jury's verdict was the true and correct verdict of all the jurors, including juror # 4. *Bowles II,* 533 N.W.2d at 617.

▬▬ Under *Knaffla,* petitioner's postconviction arguments regarding his absence from the colloquy, the judge's statement relating to race, and whether the verdict was coerced should have been raised on direct appeal and were not, and thus are now barred as grounds for postconviction relief. 309 Minn. at 252, 243 N.W.2d at 741. More importantly however, the core of petitioner's argument relating to implication of prejudice or bias was thoroughly reviewed on petitioner's direct appeal, even to the point of a sua sponte remand for the trial court's further consideration of a possible issue of jury bias. We concluded that there was none and accordingly now rule that the postconviction court did not abuse its discretion in denying relief.

Finally, we address petitioner's claim that an evidentiary hearing was required because of the totality of defects at his trial, including the issues discussed above and several others petitioner raised in his direct appeal. Since these issues were raised in petitioner's direct appeal, they are not again reviewable. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.

We hold that the postconviction court did not abuse its discretion in denying petitioner relief without an evidentiary hearing.

Affirmed.