**STATE of Minnesota, Respondent,**

v.

**Alonzo FERGUSON, Appellant.**

**No. A05–1729.**

Court of Appeals of Minnesota.

March 27, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

John Stuart, State Public Defender, Roy G. Spurbeck, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; PETERSON, Judge; and WORKE, Judge.

## O P I N I O N

LANSING, Judge.

A jury found Alonzo Ferguson guilty of second-degree intentional murder and second-degree intentional murder for the benefit of a gang. On appeal, Ferguson challenges the use of an anonymous jury, the district court's *Batson* ruling, the finding that no jury misconduct occurred, the admission of gang-expert testimony, the prosecutor's conduct during closing arguments, the sufficiency of the evidence, and the calculation of Ferguson's sentence. We agree that in sentencing Ferguson the district court incorrectly assigned a felony point for juvenile convictions and failed to merge two convictions. Although the gang-expert's testimony was improper, we conclude that the error was harmless, and we reject Ferguson's other arguments. Accordingly, we affirm in part, reverse in part, and remand.

## FACTS

Allen Wheatley Jr. drove with his father and his cousin from Chicago to Minneapolis to visit relatives in September 1994.

They arrived in the early morning hours, and, a short time later, Wheatly and five relatives decided to walk to an unlicensed alcohol seller in the relatives' south Minneapolis neighborhood.

Alonzo Ferguson, the appellant, approached the group as they were walking and made a comment about Wheatley's blue University of Kentucky sweatshirt. Ferguson told Wheatley that he was in Rolling 30s Bloods territory and that he should not wear blue in the neighborhood. The state presented evidence at trial that Ferguson was a member of the Rolling 30s Bloods.

Wheatley was offended by Ferguson's warning, and Wheatley and Ferguson began to argue. The dispute continued outside the house of one of Wheatley's relatives. Ferguson left and told Wheatley that he would return.

Wheatley entered the house and removed his sweatshirt. Within a half-hour, seven shots were fired through the dining-room window. Wheatley was hit and he died from gunshot wounds. Before the shooting, Ferguson was seen standing outside the window with another man.

Ferguson was first indicted for the murder of Wheatley in June 1996. Following a jury trial, Ferguson was convicted of first-degree murder in December 1996. In a divided decision, the supreme court affirmed the conviction. *State v. Ferguson,* 581 N.W.2d 824 (Minn.1998).

After an informant recanted in April 2000, Ferguson filed for postconviction relief and his petition was denied. On appeal, the supreme court remanded for an evidentiary hearing. *Ferguson v. State,* 645 N.W.2d 437 (Minn.2002). Following the evidentiary hearing, the district court granted Ferguson a new trial.

Ferguson's second trial, in September 2004, ended in a mistrial because of a hung jury. Before that trial, the district court granted the state's request for an anonymous jury and denied the defense's motion to exclude expert testimony about gangs.

Ferguson's third trial was held in April and May 2005. The district court adhered to the anonymous-jury and gang-expert rulings from the second trial and denied the defense's request for reconsideration. During voir dire for the third trial, the defense made a *Batson* challenge to the state's preemptory strike of a juror. The district court concluded that the defense failed to make a prima facie case of discriminatory purpose. At the end of the trial, the jury found Ferguson guilty of the lesser-included offenses of second-degree murder and second-degree murder for the benefit of a gang. Ferguson was sentenced to 326 months for the first charge and 24 months for the second charge.

The district court denied Ferguson's motion for a new trial and he appealed to this court. Pending review, a juror contacted the defense about racial comments made during jury deliberations. This court stayed the appeal and remanded for a *Schwartz* hearing. *State v. Ferguson,* No. A05–1729 (Minn.App. Sept. 6, 2005) (order). On remand, the district court held a *Schwartz* hearing and found that the claims of jury misconduct were not credible. Ferguson now appeals his conviction and sentence.

### ISSUES

I. Did the district court abuse its discretion when it empaneled an anonymous jury?

II. Did the district court clearly err by finding that the defense failed to make a prima facie case under *Batson?*

III. Did the district court abuse its discretion by denying Ferguson's motion for a new trial?

IV. Did the district court abuse its discretion by admitting expert testimony about retaliation by gang members?

V. Did the prosecutor engage in misconduct that denied Ferguson his right to a fair trial?

VI. Could a jury reasonably conclude that Ferguson was guilty of second-degree intentional murder and second-degree intentional murder for the benefit of a gang?

VII. Did the district court improperly calculate Ferguson's criminal-history score and sentence?

## ANALYSIS

### I

The use of anonymous juries is limited by two sources of constitutional protection. First, criminal defendants have a right to a trial "by an impartial jury." U.S. Const. amends. VI, XIV; Minn. Const. art. I, § 6. Second, the due process clause guarantees the right to a fair and impartial trial. U.S. Const. amend. XIV; Minn. Const. art. I, § 7; *State v. Varner*, 643 N.W.2d 298, 304 (Minn.2002).

 Minnesota appellate courts review the use of an anonymous jury for "actual prejudice to the defendant." *State v. Bowles*, 530 N.W.2d 521, 530 (Minn. 1995). An anonymous jury may be empaneled when two conditions are met. *Id.* at 530–31. First, the district court must find a "strong reason to believe that the jury needs protection from external threats to its members' safety or impartiality." *Id.* Second, the district court must take "reasonable precautions to minimize any possible prejudicial effect the jurors' anonymity might have on the defendant." *Id.* at 531. If these conditions are satisfied, a presumption arises that the defendant was not prejudiced. *State v. Ford*, 539 N.W.2d 214, 222 (Minn.1995).

All previously reported Minnesota anonymous-jury cases arose out of a single incident: the execution-style murder of Minneapolis Police Officer Jerry Haaf in 1992. *Kambon v. State*, 583 N.W.2d 748, 750–51 (Minn.1998); *Flournoy v. State*, 583 N.W.2d 564, 566 (Minn.1998) (*Flournoy II*); *State v. Ford*, 539 N.W.2d 214, 217 (Minn.1995); *State v. Flournoy*, 535 N.W.2d 354, 357 (Minn.1995) (*Flournoy I*); *State v. McKenzie*, 532 N.W.2d 210, 213 (Minn.1995); *Bowles*, 530 N.W.2d at 525. The supreme court relied on three factors in concluding that strong reasons supported the belief that the jury needed protection in these cases. First, the existence of allegations that the defendant or his associates had previously used violence to interfere with judicial and law-enforcement processes. *Flournoy I*, 535 N.W.2d at 362; *McKenzie*, 532 N.W.2d at 219–20; *Bowles*, 530 N.W.2d at 531. Second, the crime being prosecuted was itself retaliatory in nature. *Flournoy I*, 535 N.W.2d at 362; *Bowles*, 530 N.W.2d at 531. Third, significant publicity surrounded the crime and the trial. *McKenzie*, 532 N.W.2d at 219; *Bowles*, 530 N.W.2d at 531.

 The district court gave reasons relating to all three of these factors when it granted the state's motion for an anonymous jury in this case. First, the district court made note of the state's allegation that Ferguson had harassed a witness in a different case. Second, the defendant was charged with retaliating against the victim for wearing a blue sweatshirt. Third, the district court found that the pretrial publicity was extensive.

 We conclude that these factors provide strong reason to believe the jury needed protection. Although there were merely allegations that the defendant had harassed a witness, evidence to support the allegation was introduced at trial and

there is no basis for concluding the allegation was made in bad faith. The district court could therefore use the allegation to conclude that the jury needed protection. In addition, the district court provided a number of other reasons, most of which involved the defendant's gang-related activities. A defendant's gang membership may not be, by itself, a legitimate reason to use an anonymous jury. *See United States v. Vario,* 943 F.2d 236, 240–41 (2d Cir.1991) (noting that links to organized crime, without something more, would be insufficient to warrant anonymous jury). Because the district court's other reasons were sufficient, we need not determine whether gang membership alone would suffice. The record supports the district court's finding that strong reason existed to believe the jury needed protection from external threats to its members' safety or impartiality.

Furthermore, the district court took reasonable precautions to minimize any possible prejudicial effect. To minimize any possible prejudicial effect, courts should (1) permit extensive voir dire of the jurors to expose bias and (2) provide instructions designed to eliminate any implication of the defendant's guilt. *McKenzie,* 532 N.W.2d at 220.

The district court permitted extensive voir dire. The transcript contains almost 1000 pages of voir dire. The district court used a jury questionnaire and placed no significant limits on juror questioning. More importantly, Ferguson made an on-the-record waiver of his right to a jury instruction about the anonymous jury. We therefore conclude that the district court took sufficient precautions to minimize prejudicial effect. As a result, the anonymous jury was properly empaneled and the anonymity did not result in any actual prejudice.

We recognize that the district court's ruling on juror anonymity essentially reapplied the anonymous-jury decision that preceded Ferguson's second trial. Pretrial evidentiary decisions made before a mistrial are generally viewed as the law of the case and may be reapplied absent clear error or a change in circumstances. *United States v. Tham,* 960 F.2d 1391, 1397 n. 3 (9th Cir.1991). Evidentiary decisions and anonymous-jury decisions are similar in requiring a case-by-case determination. Thus, absent clear error or a change in circumstances, the district court's reliance on the previous determination did not constitute prejudicial error. Before the third trial, Ferguson argued that an anonymous jury was no longer appropriate because no jurors had been harassed during or after the second trial. But, as the district court noted, the jurors in the second trial could not have been contacted because an anonymous jury had been used. Consequently, the district court's reliance on the previous determination of the juror-anonymity factors did not constitute prejudicial error. Even if the law-of-the-case doctrine does not, in its strict sense, apply to the anonymous-jury ruling, the district court's reliance is an incorporation and ratification of the earlier finding that stands as a separate determination of the anonymous-jury issue.

## II

The state cannot exercise a peremptory challenge for a racially discriminatory purpose. *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). The existence of racial discrimination is a fact question, and we give great deference to the district court's determination. *State v. Dobbins,* 725 N.W.2d 492, 501 (Minn.2006). We reverse only if the conclusion was clearly erroneous. *State v. Gomez,* 721 N.W.2d 871, 884 (Minn.2006).

In this case, the district court did not hold a full *Batson* hearing. Instead, the district court concluded that Ferguson had failed to make a prima facie case of discriminatory purpose. A prima facie case exists when (1) a member of a protected racial group has been peremptorily excluded and (2) the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Johnson v. California*, 545 U.S. 162, 125 S.Ct. 2410, 2416–17, 162 L.Ed.2d 129 (2005); *State v. Taylor*, 650 N.W.2d 190, 201 (Minn.2002).

In 2005, after Ferguson was convicted, the U.S. Supreme Court provided relevant guidance on the first step in a *Batson* analysis. *Johnson*, 125 S.Ct. at 2417. To determine whether a prima facie case has been made, the defendant *does not* need to show that it is more likely than not that the peremptory challenge was the product of purposeful discrimination. *Id.* "Instead, a defendant satisfies the requirements of *Batson's* first step by producing *evidence sufficient to permit the trial judge to draw an inference* that discrimination has occurred." *Id.* (emphasis added). To implement the *Johnson* standard fully, it may be necessary for appellate courts to review de novo the sufficiency of the evidence to establish a prima facie case. *See State v. White*, 684 N.W.2d 500, 510 n. 2 (Minn.2004) (Hanson, J., concurring) (advocating de novo standard in advance of *Johnson* decision).

Nonetheless, even if we applied a de novo standard of review, we would be unable to conclude that the district court erred. Although the prosecutor asked no questions before exercising peremptory challenges against two nonwhite jurors, he had the benefit of the defense's questioning of the two jurors, and the jurors had also completed questionnaires, which were available to the prosecution and defense in advance of the voir dire. It is therefore less significant that the prosecutor failed to ask questions. And the prosecutor had questioned a black juror who had been accepted before the prosecutor exercised the disputed peremptory challenges. Under the circumstances, the sufficiency of the evidence to establish an inference of discrimination is not evident, and the district court therefore did not clearly err when it declined to hold a *Batson* hearing.

### III

We review a district court's decision to deny a new trial on the basis of jury misconduct for an abuse of discretion. *State v. Kyles*, 257 N.W.2d 378, 381 (Minn. 1977). Factual findings on allegations of misconduct are reviewed for clear error. *Chafoulias v. Peterson*, 668 N.W.2d 642, 662–63 (Minn.2003). And credibility determinations on conflicting testimony are the exclusive province of the fact-finder. *State v. Reiners*, 664 N.W.2d 826, 837 (Minn. 2003).

The district court held a *Schwartz* hearing and considered testimony alleging discriminatory racial statements during jury deliberations. After hearing the testimony, the district court found that the testimony alleging jury misconduct was not credible. Based on this finding, the district court denied the motion for a new trial. The testimony alleging misconduct was vague and contradicted by other jurors. Because the testimony conflicted, the district court was required to make credibility determinations, which receive special deference. *Id.* We discern no error in the district court's findings incorporating the credibility determinations, and we, therefore, conclude that the district court did not abuse its discretion when it denied Ferguson's motion for a new trial.

### IV

In general, expert testimony is admissible if (1) the witness is qualified as an

expert and (2) the witness's knowledge will assist the trier of fact. Minn. R. Evid. 702. Expert testimony should nonetheless be excluded if the probative value of the testimony is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403.

■ On expert testimony relating to gangs the Minnesota Supreme Court has provided more specific guidance. *State v. Martinez,* 725 N.W.2d 733, 738–39 (Minn. 2007); *State v. Jackson,* 714 N.W.2d 681, 691 (Minn.2006); *State v. Blanche,* 696 N.W.2d 351, 372–73 (Minn.2005); *State v. DeShay,* 669 N.W.2d 878, 886 (Minn.2003); *State v. Lopez–Rios,* 669 N.W.2d 603, 611–13 (Minn.2003). Gang-expert testimony should only be admitted if it is helpful to the jury in making the specific factual determinations that jurors are required to make. *Blanche,* 696 N.W.2d at 373. The potential problem with gang-expert testimony is that although it "logically adds nothing to witness credibility, it does strongly suggest to the jury that a law enforcement specialist believes the state's witnesses and therefore the jury should find the defendant guilty." *DeShay,* 669 N.W.2d at 886.

■ Ferguson raises a narrow challenge to the expert's testimony about mandatory retaliation. The expert testified that "when someone who is a member of a gang is disrespected ... retaliation must occur." In order to save face, the gang member must personally retaliate or "they will lose face or respect of the other gang members." The prosecutor later asked what would happen if a person—as Wheatley apparently did in this case—said to a gang member, "F—k you, f—k your colors, f—k your hood." The expert testified that the statement would ensure "that you're going to be assaulted." The expert also testified that Ferguson was a member of the Rolling 30s Bloods and that the

expert had received no report about Ferguson losing face in the gang after the encounter with Wheatley.

In *Blanche,* the supreme court held that it was improper for an expert to testify that "if a gang member is involved in an incident with a rival gang, members of his gang have to retaliate in order to maintain their respect within the community and the gang subculture." 696 N.W.2d at 373. The *Blanche* holding applies to this case because the expert testified that retaliation was *mandatory.* The expert's opinion testimony was improper because the jury could infer that Ferguson was the perpetrator "simply because he is a member of a gang." *Id.* at 374. Testimony about *mandatory* retaliation tends to "dissuade [the jury] from exercising its independent judgment." *DeShay,* 669 N.W.2d at 888. Because the objectionable expert testimony in this case closely parallels the expert testimony determined to be error in *Blanche,* we similarly conclude that the testimony about mandatory retaliation was improper and its admission was an abuse of discretion.

■ The difficult question in this case is whether the admission of the expert's testimony is harmless error. When gang-expert testimony is erroneously admitted, we will affirm the conviction if the error was harmless. *See Lopez–Rios,* 669 N.W.2d at 613 (applying harmless-error analysis). Ferguson argues that we should apply the rigorous, five-factor standard for harmless error set forth in *State v. Caulfield,* 722 N.W.2d 304, 314–16 (Minn.2006). Under *Caulfield,* we determine whether error is harmless beyond a reasonable doubt by considering five factors: (1) the manner in which the evidence was presented, (2) whether the evidence was highly persuasive, (3) whether it was used in the closing argument, (4) whether it was effectively countered by the defense,

and (5) the strength of the other evidence against the defendant. 722 N.W.2d at 314–316.

Identifying a harmless-error standard for evidentiary error in criminal cases is complicated by divergent application in appellate cases. *See Townsend v. State,* 646 N.W.2d 218, 222–23 (Minn.2002) (using harmless-error-beyond-a-reasonable-doubt standard in case that did not involve constitutional error); *State v. Shoen,* 598 N.W.2d 370, 377–78 n. 2 (Minn.1999) (acknowledging discord in cases). In *Caulfield* the supreme court clarified that the *Townsend* harmless-beyond-a-reasonable-doubt standard applies only to *constitutional* error. *See Caulfield,* 722 N.W.2d at 314–15 (discussing standard for *constitutional* error); *see also State v. Valtierra,* 718 N.W.2d 425, 435 n. 4 (2006) (noting that standard for harmless evidentiary error is lower). Because the jury can bring its common sense to evidentiary issues, the jury may be "well-positioned to judge" the value of the evidence. *Valtierra,* 718 N.W.2d at 435. As a result, we reverse only when the error substantially influences the jury's decision. *Id.; see also DeShay,* 669 N.W.2d at 888 (applying "error-substantially-influencing-jury-decision-to-convict" standard to issue of whether gang-expert testimony was harmless error.)

 We therefore conclude that the *Caulfield* analysis does not apply to erroneously admitted gang-expert testimony. Gang-expert testimony may have due process implications, but the primary concern is that the testimony violates the rules of evidence. *See Lopez–Rios,* 669 N.W.2d at 613 (discussing rules 702 and 403). When gang-expert testimony is erroneously admitted, reversal "is warranted only when the error substantially influences the jury's decision." *DeShay,* 669 N.W.2d at 888; *see also Martinez,* 725 N.W.2d at 739 (noting that in every recent gang-expert case the supreme court "concluded that reversal was not warranted because the error did not affect substantial rights").

Under the circumstances, we cannot conclude that the gang-expert's testimony substantially influenced the jury's decision. First, the evidence against Ferguson was generally strong. The state had eyewitness testimony that Ferguson was standing outside the window when the shots were fired. Second, there was other evidence that Ferguson intended to retaliate. Witnesses testified that, shortly before the shooting, Ferguson yelled, "I'll be back." Third, although the expert's testimony may have been emphasized, it was not compelling. For example, in the prosecutor's closing argument, he told the jury that the expert's testimony alone "would be sufficient to warrant a guilty verdict because he told you exactly how it is laid out with the gangs out on the street." But it is unlikely that the jury would take the expert's testimony about mandatory retaliation literally. Any reasonable juror would recognize exceptions to the retaliation rule.

In addition, we note that the expert's testimony also supported Ferguson's theory of the case. The evidence suggested that the victim, Allen Wheatley Jr., argued with two people that night—Alonzo Ferguson and Prentice Wheatley. The defense's theory of the case apparently was that Prentice Wheatley was the killer. The evidence of a fight between Prentice Wheatley and Allen Wheatley Jr. is not well-established and, even if considered in its strongest light, it provides only a highly speculative basis for the jury to believe that Prentice Wheatley, rather than Ferguson, shot Allen Wheatley Jr. Nonetheless, the defense elicited testimony to show that Prentice Wheatley was also a gang member. Therefore, the expert's testimo-

ny about retaliation supported not only the prosecution's theory of the case, but also the defense's theory.

In light of the record as a whole, we conclude that admission of the expert testimony did not substantially affect the jury's verdict. Admitting the gang-expert testimony was therefore harmless error.

## V

■ The overarching problem presented by prosecutorial misconduct is that it may deny the defendant's right to a fair trial. *State v. Ramey,* 721 N.W.2d 294, 300 (Minn.2006). We will reverse a conviction if prosecutorial error, considered in light of the whole trial, impaired the defendant's right to a fair trial. *State v. Swanson,* 707 N.W.2d 645, 658 (Minn.2006). Ferguson argues that the prosecutor engaged in misconduct in five different ways, but we conclude that the record does not support the allegations of misconduct.

■ First, we agree that it is misconduct for a prosecutor to mischaracterize evidence or make arguments unsupported by the record. *State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993). But we cannot conclude that the prosecutor improperly mischaracterized the evidence when he discussed the location of a car. Although the prosecutor's momentary reference to the car suggested that this evidence was only valuable for impeachment, the prosecutor apparently realized as he was making the comment that the defense had admitted the testimony as substantive evidence through a hearsay exception for prior testimony. The prosecutor immediately substituted a different example of impeachment evidence. Under the circumstances, we cannot conclude that the prosecutor's reference was misconduct.

■ Second, we do not agree that the prosecutor impermissibly bolstered the testimony of Prentice Wheatley by stating that the witness exposed himself to criminal liability by testifying. Ferguson had claimed that he had been at a party with Prentice Wheatley that night. Instead of verifying Ferguson's story, Prentice Wheatley testified that he had been selling cocaine during that time period. Contrary to the prosecutor's suggestion, Prentice Wheatley could not have been prosecuted for selling drugs because the relevant statutes of limitations had passed. But the message actually conveyed by the prosecutor's statements was that Prentice Wheatley would be unlikely to admit to illegal acts if he had actually been doing something legal. Because Prentice Wheatley was testifying for the state, it is very unlikely that the jury would conclude that Prentice Wheatley might be prosecuted either for perjury or for his statement that he was selling drugs. The prosecutor therefore did not improperly bolster a witness's testimony or misstate facts.

■ Third, we reject Ferguson's argument that the prosecutor told the jury to protect society or to send a message with its verdict. During closing arguments, the prosecutor said, "I'm bringing them in here because those people deserve to be safe in their own neighborhoods." When viewed in context, however, this statement did not tell the jury to protect society or to send a message. The prosecutor was explaining why a number of the state's own witnesses appeared hostile or reluctant to testify. The prosecutor's statement came in the context of an extended, general explanation of the practice of forcing people to testify.

■ Fourth, we disagree that the prosecutor impermissibly argued that Ferguson tailored his 1996 trial testimony to fit the testimony of other witnesses. A prosecutor cannot, without evidence of tailoring, argue that the defendant tailored

his testimony to fit the state's case. *Swanson,* 707 N.W.2d at 657–58. In this case, Ferguson's account of the events changed significantly as the investigation progressed. Initially, Ferguson denied seeing the victim on the day of the shooting. After obtaining discovery and learning about the state's evidence, Ferguson's story changed significantly. The prosecutor thus had evidence of tailoring and could legitimately point out changes in Ferguson's story.

■ Fifth, the record does not support a claim that the prosecutor attempted to lessen the burden of proof. The prosecutor said, "Many people have exited these doors after having been found guilty by proof beyond a reasonable doubt." The prosecutor said this while explaining that reasonable doubt is not an impossible standard to meet. In context, the prosecutor's statement does not suggest that the state's burden is light or that the defendant was guilty by association. Instead, the prosecutor gave a legitimate explanation of the state's burden of proof and did not commit misconduct.

## VI

■ Evidence is sufficient to support a conviction if, given the facts in the record and the legitimate inferences drawn from those facts, a jury could reasonably conclude the defendant committed the crime charged. *State v. Laine,* 715 N.W.2d 425, 430 (Minn.2006). We view the evidence in the light most favorable to the verdict and assume the jury disbelieved any evidence in conflict with the verdict. *State v. Bolstad,* 686 N.W.2d 531, 538–39 (Minn.2004). Convictions based on circumstantial evidence warrant a higher standard of review. *Bernhardt v. State,* 684 N.W.2d 465, 477 (Minn.2004). A conviction based on circumstantial evidence will be upheld if the reasonable inferences

drawn from the evidence are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *State v. Leake,* 699 N.W.2d 312, 319 (Minn.2005).

■ Ferguson was found guilty of second-degree murder and second-degree murder for the benefit of a gang. To support a conviction of second-degree murder, the evidence must show that the defendant (1) causes the death of a human being (2) with intent to effect the death of that person or another, (3) without premeditation. Minn.Stat. § 609.19, (1) (1994). A conviction of second-degree murder for the benefit of a gang requires evidence that the defendant (1) committed second-degree murder and (2) did so "for the benefit of, at the direction of, or in association with a criminal gang, with the intent to promote, further, or assist in criminal conduct by gang members." Minn.Stat. § 609.229, subd. 2 (1994).

The evidence was sufficient to show that Ferguson shot Wheatley or assisted the person who did shoot him. Shortly before the shooting, Ferguson was seen standing outside the dining room window. Because Wheatley had just arrived in Minneapolis earlier that morning and had taken his sweatshirt off, Ferguson was one of the four people in the area, not in the house, who could identify him. The other three people described where they were at the time of the shooting. The seven shots were fired in rapid succession and only Wheatley was hit. The single target and multiple shots validate the intentional nature of the shooting. Because Wheatley had just arrived in Minneapolis, the jury could infer that Ferguson was the only person who had a reason and opportunity to intentionally shoot Wheatley.

In addition to the pattern of the shots, further evidence sustains the jury's finding that Ferguson intentionally killed Wheat-

ley. Multiple witnesses testified that Ferguson and Wheatley had a heated argument about Wheatley's sweatshirt. The witnesses testified that they saw the fight and identified Ferguson. According to the witnesses, Ferguson walked away and yelled, "I'll be back."

Admissible evidence established that Ferguson was a gang member who might feel obligated to retaliate against Wheatley for wearing blue in the neighborhood. This evidence also supports the element of intent. In addition, this evidence establishes that the crime was committed for the benefit of a gang. The parties stipulated that the Rolling 30s Bloods was a criminal gang.

Although a significant amount of evidence linked Ferguson directly to the shooting, the record contains no direct evidence that Ferguson actually fired the shots. Because Ferguson was charged on an aiding-and-abetting theory, the state was not required to prove that Ferguson actually fired the gun. Nonetheless, the evidence of aiding and abetting is circumstantial. We therefore address whether "the reasonable inferences drawn from the evidence are inconsistent with any rational hypothesis except that of the defendant's guilt." *Gates*, 615 N.W.2d at 337. The record contains direct evidence that Ferguson was standing outside the dining-room window immediately before the shooting. If the jury believed that testimony, and the verdict demonstrates that it did, then the rest of the evidence is inconsistent with any rational hypothesis except that of Ferguson's guilt.

We therefore conclude that the evidence was sufficient to convict Ferguson of second-degree intentional murder and second-degree intentional murder for the benefit of a gang.

## VII

Finally, we address Ferguson's claim for modification of his sentence. Ferguson argues that the district court improperly assigned a criminal-history point and improperly imposed a second sentence for a lesser-included offense. Both issues involve questions of law, which we review de novo. *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn.2006). We conclude that both of Ferguson's sentencing arguments are correct.

First, Ferguson should not have been assigned a criminal-history point. A defendant should be sentenced according to the sentencing guidelines in effect at the time the crime was committed. Minn. Sent. Guidelines III.F. Under the 1994 sentencing guidelines, a defendant can be assigned a criminal-history point if the defendant, after his sixteenth birthday, committed two juvenile offenses that would have been felonies if committed by an adult. Minn. Sent. Guidelines II.B.4 (1994). Currently, the age limit is fourteen. Minn. Sent. Guidelines II.B.4 (2007). Ferguson had two juvenile offenses, but one of them was committed before he turned sixteen. No partial points are allowed. Minn. Sent. Guidelines II.B.405 (1994). Therefore, Ferguson should have been assigned a criminal-history score of zero. Under the 1994 sentencing guidelines, his mid-range presumptive sentence for second-degree intentional murder would have been 306 months. Minn. Sent. Guidelines IV (1994).

Second, Ferguson's convictions should have merged into a single conviction, because murder is a lesser-included offense of murder committed for the benefit of gang. *Lopez–Rios*, 669 N.W.2d at 609, 615–16. A person cannot be convicted of both the crime charged and a lesser-included offense. Minn.Stat. § 609.04, subd. 1 (1994). Ferguson therefore should

have only been convicted of second-degree intentional murder for the benefit of a gang, and we vacate his second-degree murder conviction.

When a crime is committed for the benefit of a gang, the 1994 sentencing guidelines permit 12 months to be added to sentence that would be assigned for the underlying crime. Minn. Sent. Guidelines II.G (1994). With that addition, Ferguson's mid-range presumptive sentence is 318 months. Minn. Sent. Guidelines IV (1994). The 1994 guidelines provided for a presumptive range between 299 and 313 months for the underlying offense. Id. The district court could impose any sentence within the range of 311 to 325 months without departing from the guidelines. Minn. Sent. Guidelines II.C (1994). We therefore remand to give the district court an opportunity to impose an appropriate sentence within that range.

## DECISION

The district court did not err by empaneling an anonymous jury because the record provides strong reasons to believe the jury needed protection and the district court took reasonable precautions to minimize any possible prejudicial effect. Although some of the gang-expert's testimony was erroneously admitted, we conclude on this record that the error was harmless. We also conclude that Ferguson failed to state a prima facie case under *Batson*, that the district court did not err by finding that no jury misconduct occurred, that the record does not support a claim of prosecutorial misconduct, and that the evidence was sufficient to convict Ferguson. Because Ferguson's sentence was incorrectly calculated, however, we remand for sentencing within the presumptive range as modified by the crime-for-the-benefit-of-a-gang statute.

**Affirmed in part, reversed in part, and remanded.**