STATE OF MINNESOTA

IN SUPREME COURT

A24-1211

Hennepin County                                                        Thissen, J.

Nantambu Noah Kambon,

         Appellant,

vs.                                                                Filed: July 16, 2025
                                                           Office of Appellate Courts
State of Minnesota,

         Respondent.

_____

Nantambu Noah Kambon, Bayport, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The new-interpretation-of-federal-or-state-law exception to the two-year time bar set forth in Minnesota Statutes section 590.01, subdivision 4(b)(3) (2024), does not apply to appellant's claims for postconviction relief.

Affirmed.

1

Considered and decided by the court without oral argument.

O P I N I O N

THISSEN, Justice.

Almost 30 years after we affirmed his conviction for first-degree murder, Nantambu Noah Kambon (f/k/a Shannon Noah Bowles) filed a petition for postconviction relief raising several issues and asking for a new trial. The district court denied the petition without an evidentiary hearing, reasoning that it was untimely. Kambon appealed.

On appeal from the postconviction denial, Kambon raises two issues he asserted in the district court and makes a new argument for the first time before us.[1] First, citing *State v. Kelley*, 517 N.W.2d 905 (Minn. 1994), Kambon claims that the trial judge committed several procedural errors when the jury reported it was deadlocked during deliberations. Kambon asserts that these errors include: (1) holding a discussion with the jury without Kambon and his counsel present; (2) coercing the jury into reaching its verdict by making impermissible comments and failing to properly instruct the jury when it seemed deadlocked; and (3) failing to meet with Juror #4 separate from the rest of the jurors to discuss inferences of juror misconduct. Second, Kambon argues that we erred in our 1995 decision on Kambon's direct appeal from his conviction when we did not order the district

---

[1]    In addition to the claims before us on appeal, Kambon asserted in his postconviction petition that, at trial, the prosecution improperly exploited certain witnesses' witness protection program status in violation of *State v. Harris*, 521 N.W.2d 348 (Minn. 1994). Kambon also claimed that the imposition of consecutive life sentences was erroneous. In his briefs to us, Kambon did not ask that we review those issues and therefore neither is currently before us. *See State v. Robinette*, 964 N.W.2d 143, 147 n.6 (Minn. 2021) (explaining that a party forfeits appellate review by failing to brief an issue on appeal).

court to conduct a *Schwartz* hearing[2] to address allegations of juror misconduct. *See State v. Bowles* (*Bowles I*), 530 N.W.2d 521, 537 (Minn. 1995) (sua sponte remanding to the trial court to supplement the record and either "file a memorandum explaining in detail the basis for its conclusion 'that [no *Schwartz* hearing was necessary because] there was no [juror] impropriety whatsoever,' conduct a *Schwartz* hearing to investigate the possible juror misconduct, or conduct any further proceedings necessary to fully develop the record").[3]

Finally, in his briefs on appeal, Kambon asserts for the first time that his postconviction claims are timely because the United States Supreme Court recently issued a decision overruling *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). As we understand it, Kambon claims that under *Loper Bright*, we no longer need to defer to our past decisions or the district court's past determinations in this case.

## FACTS[4]

In 1992, Minneapolis Police Officer Jerry Haaf was shot and killed in the Pizza Shack restaurant on Lake Street in Minneapolis. *Bowles I*, 530 N.W.2d at 525–26. Gerald

---

[2]     A *Schwartz* hearing is a procedure which allows a district court to "investigate alleged juror misconduct by summoning a juror for questioning about the alleged misconduct in the presence of counsel for both parties." *State v. Jackson*, 977 N.W.2d 169, 170 n.1 (Minn. 2022); *see also Schwartz v. Minneapolis Suburban Bus Co.*, 104 N.W.2d 301 (Minn. 1960).

[3]     At the time of his trial and direct appeal, Kambon was known as Shannon Bowles.

[4]     The full facts can be found in our previous decisions: *Bowles I*, 530 N.W.2d at 525–29, and *State v. Ford*, 539 N.W.2d 214 (Minn. 1995) (reviewing the conviction of one of the four co-defendants in the Haaf murder).

Lubarski, who was seated with Haaf, was shot in the arm but survived. *Id.* at 526. The State alleged that Kambon was one of the shooters and charged him with first-degree premeditated murder, Minn. Stat. § 609.185(1) (2000); first-degree murder of a police officer, Minn. Stat. § 609.185(4) (1992); and attempted first-degree murder, Minn. Stat. §§ 609.17 (2024), 609.185(1), under an aiding and abetting theory of liability, Minn. Stat. § 609.05, subd. 1 (2024). *Bowles I*, 530 N.W.2d at 525–27.

The case proceeded to trial. The day after the jury retired to deliberate, Juror #4—the only Black juror—asked to meet privately with the trial judge.[5] *Bowles I*, 530 N.W.2d at 528. The judge did not meet with Juror #4 privately. *Id.* Rather, after receiving consent from both the State and Kambon's counsel, the judge met alone with the entire jury. *Id.* The jurors explained that they were deadlocked and that tensions were running high. *Id.* at 535. Juror #4 said that other jurors were implying her position was a "racial thing" and that "if the defendant was white [Juror #4] would have had a different verdict." *Id.* After further conversation, the jurors agreed to recess for the evening and decide the next morning whether to continue to deliberate.[6] *Id.* Three days later, the jury found Kambon guilty on all three charges. *Id.*

Kambon filed two post-trial motions. *Id.* at 528. In the first, he requested a judgment of acquittal or, alternatively, a new trial. *Id.* In the second, he requested a

---

[5]   The jury in Kambon's case was anonymous, meaning individuals were referred to only by number. *Bowles I*, 530 N.W.2d at 528.

[6]   The discussion between the trial judge and jury was on the record. We provided a more detailed account of this discussion in *Bowles I*, 530 N.W.2d at 535, and *Kambon v. State* (*Bowles III*), 583 N.W.2d 748, 751–52 (Minn. 1998).

4

*Schwartz* hearing to investigate possible juror misconduct. *Id.* The trial judge denied the motions. *Id.* In denying his request for a *Schwartz* hearing on alleged juror misconduct, the trial judge stated that "based on my discussions with the jurors after the conclusion of the trial and the verdict being rendered . . . there was no impropriety whatsoever." *Id.* at 535. Kambon's subsequent request for reconsideration of his first motion for acquittal based on the recantation of a witness was also denied. *Id.* at 528.

Kambon appealed his convictions, raising several arguments that are not relevant to this appeal. We determined that each lacked merit. *Id.* at 525. But we expressed "great concern" about an issue that Kambon did not raise on appeal; namely, the trial judge's decisions to meet with the entire jury after Juror #4 requested a private meeting and to deny a *Schwartz* hearing based on his own determination from "discussions with the jurors after the conclusion of the trial and the verdict being rendered, . . . that there was no [juror] impropriety whatsoever." *Id.* at 535–37. Retaining jurisdiction, we remanded the case to the district court and directed it to "file a memorandum explaining in detail the basis for its conclusion 'that there was no [juror] impropriety whatsoever,' conduct a *Schwartz* hearing to investigate the possible juror misconduct, or conduct any further proceedings necessary to fully develop the record." *Id.* at 537. The trial judge filed a "remand memorandum" explaining the basis for his conclusion. *See State v. Kambon* (*Bowles III*), 583 N.W.2d 748, 752 (Minn. 1998) (describing the trial judge's remand memorandum in detail, including the judge's clarification that each juror "spoke for themselves in the polling" and that, during an informal post-trial meeting between the judge and the jurors, Juror #4 indicated that "her concern over the [']racial thing' had abated and she felt no particular

pressure to vote one way or the other"). We concluded that we were "satisfied" that the jury's verdict was "true and correct" and affirmed Kambon's conviction. *State v. Bowles* (*Bowles II*), 533 N.W.2d 617 (Minn. 1995) (order).

Kambon filed a postconviction petition in 1997. He argued, among other things, that we should grant a new trial because the trial judge spoke with the jury outside of his presence and, during the discussion, the trial judge discredited Kambon's racial bias defense and coerced the jury into convicting. *Bowles III*, 583 N.W.2d at 750.[7] The district court denied the petition without a hearing. *Id.*

On review, we concluded that the district court did not abuse its discretion in denying relief on these claims without an evidentiary hearing. *Id.* at 752. We reasoned that at the time of his direct appeal Kambon knew the facts giving rise to his claims about the impact of the discussion with the jury but failed to raise them. *Id.* Accordingly, we held that the claims could not form the basis for postconviction relief under *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). *Bowles III*, 583 N.W.2d at 752.[8]

---

[7]    In his 1997 postconviction petition, Kambon also argued that the trial judge was not impartial because he participated in a pretrial judge's meeting discussing the use of anonymous juries in the Haaf murder cases. *Bowles III*, 583 N.W.2d at 750. Kambon further asserted that the totality of errors raised on direct appeal and in the postconviction petition collectively violated his due process rights. *Id.* We concluded that the district court did not abuse its discretion in denying these claims. *Id.* at 752. Kambon does not raise arguments akin to these claims in his current postconviction petition.

[8]    As we explained in *Bowles III*, under *Knaffla*, "[i]ssues raised on direct appeal or known at that time will not be considered in a petition for postconviction relief." *Bowles III*, 583 N.W.2d at 750. In *Bowles III*, in affirming the district court's denial of the postconviction petition, we also reviewed our disposition of Kambon's direct appeal in *Bowles I* and *Bowles II* described above. *Id.* at 752. We stated that "the core of petitioner's

6

In 2024, Kambon filed a second postconviction petition—the one presently before us on appeal—raising several issues. The district court denied the petition without an evidentiary hearing, finding that the claims in the petition were time barred under Minnesota Statutes section 590.01 (2024). The district court observed that petitions for postconviction relief must be filed within two years after the judgment of conviction or the appellate court's disposition on direct appeal. Minn. Stat. § 590.01, subd. 4(a). Because Kambon's conviction became final before August 1, 2005, the two-year time limitation ended on August 1, 2007. *Wayne v. State*, 912 N.W.2d 633, 639 (Minn. 2018) (explaining how, under the 2005 amendments to the postconviction statute, "[t]hose convicted before August 1, 2005, had two years—until August 1, 2007—to file a timely postconviction petition").

The district court also rejected Kambon's argument that his claim qualified under the new interpretation of law exception to the two-year time limitation. Minn. Stat. § 590.01, subd. 4(b)(3). In the district court, Kambon argued that two of our 1994 decisions—*Kelley*[9] and *State v. Harris*, 521 N.W.2d 348 (Minn. 1994)—were new interpretations of law for purposes of the exception to the two-year time limitation. The

argument relating to implication of prejudice or bias was thoroughly reviewed on petitioner's direct appeal." *Id*.

[9]    As long ago as *Bowles I*, in our sua sponte analysis of the concerns raised by the trial judge's discussions with the jury—an issue Kambon did not raise on direct appeal—we relied on *Kelley*, 517 N.W.2d at 908, 910, as support for our instruction that "communications with the jury should always be in the presence of counsel and the defendant, and . . . a juror alleging misconduct by other jurors should be questioned outside of the presence of the other jurors." *Bowles I*, 530 N.W.2d at 535 n.20.

district court rejected this argument, reasoning that this petition was filed nearly 30 years after Kambon's direct appeal concluded, far beyond the two years allowed by statute, and all issues raised were known or should have been known during the previous petitions. Kambon appealed, also raising for the first time the argument that the United States Supreme Court's decision in *Loper Bright*—overruling *Chevron*—is applicable here.

## ANALYSIS

We review a district court's denial of a postconviction petition without an evidentiary hearing for abuse of discretion. *Davis v. State*, 15 N.W.3d 635, 642 (Minn. 2025). A district court abuses its discretion when it has "exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quoting *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010)). Minnesota's postconviction statute provides that a district court need not hold an evidentiary hearing on a postconviction petition if, after viewing the facts in the light most favorable to the petitioner, it is "conclusively show[n]" that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2024); *El-Shabazz v. State*, 984 N.W.2d 569, 573 (Minn. 2023).

On appeal, Kambon seeks reversal of the district court's decision to deny his second postconviction petition. He limits his appeal to two of the claims he raised in the district court. First, he claims that the trial judge's discussion with the jury was in error and violated his constitutional rights. Kambon asserts that under *Kelley*, 517 N.W.2d at 908–11, it was impermissible for the trial judge to meet with the jury during deliberations without Kambon and his counsel present; that the trial judge coerced the jurors into

8

reaching their verdict by making impermissible comments to the jury and failing to properly instruct the jury when it seemed deadlocked; and that the trial judge impermissibly failed to meet with Juror #4 outside the presence of the other jurors. Second, Kambon claims that the trial court should have held a *Schwartz* hearing to investigate potential race-based juror misconduct and the alleged coercive atmosphere of the jury room, and that our decision in *Bowles I*—to allow the trial judge to submit a supplemental memorandum more fully explaining his decision to deny the *Schwartz* hearing—was impermissible.

Kambon also offers a new argument for the first time on appeal as to why his claims for postconviction relief are timely: He seems to assert that the Minnesota Supreme Court and Minnesota district courts are merely administrative agencies created by the Legislature. Kambon contends that under the *Chevron* rule of deference to administrative agency interpretations of law, *see generally Chevron*, 467 U.S. at 837, it was appropriate for us to defer to our past decisions about the law. Kambon argues, however, that when the Supreme Court overruled *Chevron* in *Loper Bright*, 603 U.S. at 412, it changed the level of deference we owe to our past decisions and past determinations of the district court.[10] Specifically, he claims that we need not defer to earlier decisions of the "Hennepin County Administrative Tribunal" or "administrators such as Justice Page" (who wrote the decisions

_____

[10] Kambon seems to make a somewhat similar argument under *Davis v. United States*, 564 U.S. 229 (2011), and *United States v. Leon*, 468 U.S. 897 (1984). Those cases articulate a good faith exception to the exclusionary rule that applies in the Fourth Amendment context. *Davis*, 564 U.S. at 241; *Leon*, 468 U.S. at 918–20. Kambon argues that, because the scope of reliance on prior court decisions for purposes of the good faith exception is narrowly construed, we need not defer to our prior decisions when they are erroneous. The good faith exception to the exclusionary rule does not work the way Kambon claims and has no application to this case.

in *Bowles I* and *II*). Accordingly, Kambon seemingly argues, before *Loper Bright*, Kambon could not argue that we should not defer to our past decisions; it was only after the Supreme Court's June 28, 2024 decision in *Loper Bright* that his claims in the second postconviction petition became viable. *See Loper Bright*, 603 U.S. at 412. In other words, Kambon claims that the new interpretation of law exception to the two-year time limitation on postconviction petitions applies. Minn. Stat. § 590.01, subd. 4(b)(3).[11]

We affirm the district court's denial of Kambon's second postconviction petition because Kambon's claims are untimely. Petitions for postconviction relief from convictions that became final before August 1, 2005, are untimely unless they were filed by August 1, 2007. Minn. Stat.§ 590.01, subd. 4(a); *Wayne*, 912 N.W.2d at 639. Kambon's petition filed in 2024 is plainly untimely.

In addition, Kambon does not identify any exception to allow us to consider his otherwise untimely claim. First, to the extent Kambon argues that *Kelley* constituted a new rule of law subject to the two-year exception in section 590.01, subdivision 4(b)(3), even a new rule of law that is retroactively applicable "must be filed within two years of the date

---

[11] This is our best understanding of the claim Kambon is making on appeal. Minnesota's postconviction statute requires that we "liberally construe" postconviction petitions and "look to the substance thereof and waive any irregularities or defects in form." Minn. Stat. § 590.03 (2022). Similarly, we read pro se arguments "with an understanding eye." *See Jackson v. State*, 919 N.W.2d 470, 472–73 (Minn. 2018).

the claim arises." *Id.*, subd. 4(c). Kambon's pending postconviction petition is untimely under this standard.[12]

Second, Kambon cannot obtain postconviction relief based on his otherwise untimely challenge to our decision in *Bowles I* (allowing the trial judge to submit a supplemental memorandum more fully explaining his decision to deny the *Schwartz* hearing) because *Loper Bright* constitutes a new interpretation of law under section 590.01, subdivision 4(b)(3). First, Kambon forfeited this argument because he failed to make it in his postconviction petition to the district court. *Schleicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006) (noting that issues not raised in a petition for postconviction relief cannot be raised on appeal). Second, even if we were to consider Kambon's argument, we conclude that it fails because it starts from a fundamentally flawed premise. *See Pearson v. State*, 946 N.W.2d 877, 883 n.9 (Minn. 2020) (stating that, in the interest of judicial economy, we may exercise our discretion to decide issues not properly before us). Courts are not administrative agencies. *See* Minn. Const. art. III, § 1. The *Chevron* doctrine never applied

---

[12] The district court's denial of some of the claims in Kambon's second postconviction petition was also proper because he raised them, and we rejected them, in a prior proceeding. Minn. Stat. § 590.04, subd. 3 (2024). Specifically, we previously reviewed and addressed Kambon's arguments that the trial judge erred by meeting with the jury during deliberations without Kambon and his counsel present and by failing to properly instruct the jury when it seemed deadlocked. *See Bowles III*, 583 N.W.2d at 750–52. Kambon made these same arguments in his first postconviction petition, and we affirmed the district court's summary denial of those claims. *Id.* A district court may "summarily deny a second or successive petition for similar relief on behalf of the same petitioner . . . when the issues raised in [the petition] have previously been decided by the court of appeals or the supreme court in the same case." Minn. Stat. § 590.04, subd. 3; *see also Onyelobi v. State*, 932 N.W.2d 272, 278 (Minn. 2019).

to deference afforded to prior court decisions. *See Chevron*, 467 U.S. at 842–43 (describing when a court needed to give deference to an administrative agency's interpretation of a statute).[13] Nothing in *Chevron* prevented Kambon from bringing the claims he asserts in his second postconviction petition—claims he knew or should have known about—before 2007. For this reason, *Loper Bright*, while a new interpretation of law, is not a new interpretation of law *that applies retroactively to Kambon's case* for purposes of the exception to the two-year time limitation on postconviction petitions set forth in section 590.01, subdivision 4(b)(3).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

---

[13] It is also worth noting that our court never explicitly adopted the *Chevron* doctrine as a principle of Minnesota law.